## FARMERS' EXCHANGE BANK OF LINDSAY v. CUTLER et al.

No. 14623—Opinion Filed Sept. 16, 1924.

**1. Homestead—Liberal Construction of Constitution and Statutes.**

Constitutional and statutory provisions relating to homestead exemptions are liberally construed in the interest of the family home.

**2. Appeal and Error—Discretion of Trial Court—Dissolution of Attachment.**

Applications to dissolve attachments address themselves to the trial court alone; and this court will not undertake to weigh the evidence presented when there is testimony reasonably supporting the finding as made by the trial court.

**3. Same—Attachment on Homestead.**

Evidence examined, and held to sufficiently support the order and judgment of the trial court dissolving plaintiff's attachment levied upon property claimed by the defendant as her homestead.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Garvin County; A. C. Barrett, Judge.

Action by Farmers' Exchange Bank of Lindsay against C. H. Cutler and others. From judgment in favor of the defendants, plaintiff brings error. Affirmed.

Blanton, Osborn & Curtis, for plaintiff in error.

H. G. Butts and Bowling & Farmer, for defendants in error.

Opinion by PINKHAM, C. The only question in this case is as to whether the trial court erred in sustaining the motion of defendant Addie Cutler to dissolve the attachment in this cause.

The plaintiff in error, as plaintiff, brought its action against the defendant and others in the district court of Garvin county on July 14, 1923, the basis of its cause of action being the recovery upon a promissory note in the sum of $1,500, with interest, executed by the defendant C. H. Cutler as principal.

In its second cause of action the plaintiff alleges that the defendant C. H. Cutler is

possessed of a considerable sum of money of approximately $4,000, which accrued to him from sources not arising from exempt property and that it should be applied upon the indebtedness sued on in its first cause of action, and asks for garnishment and injunction against the defendant C. H. Cutler, as well as the First National Bank of Pauls Valley, Bud Helm, and Eddie Cutler, the last named being the wife of the principal defendant, C. H. Cutler; that all of the defendants named are conspiring together for the purpose of defeating the plaintiff, and that each of said defendants be restrained and enjoined from transferring or in any manner negotiating the evidence of said funds.

Thereafter and on the same day affidavits for garnishment against the defendants, the Cutlers, and Bud Helm, and attachment against the defendant Addie Cutler were filed, and writs of garnishment and attachment issued by the court clerk. On the same day a temporary restraining order was procured against both the Cutlers, Bud Helm, and the First National Bank of Pauls Valley, as prayed for in plaintiff's petition.

The writ of attachment was levied by the sheriff on the property described as lot 10 and north 25 feet of lot 9, located in Pauls Valley, on the 16th day of July, and appraised at $2 000.

The grounds for attachment stated in the plaintiff's affidavit are as follows:

"That the said C. H. Cutler is disposing of his property and concealing the same with intention to hinder, delay, and defraud his creditors and more expressly the plaintiff above named; that he has within the last 30 days transferred property and rights in action to his wife, Addie Cutler, and said Addie Cutler is falsely and fraudulently claiming to be the owner thereof."

The defendant Addie Cutler filed her verified motion to dissolve the attachment on the property levied upon the grounds:

"First, that she is in no manner liable for the indebtedness to the plaintiff and that no allegation contained in its petition shows or alleges that she is liable therefor; second, that she has a husband and three minor children and the property above described is and was her homestead at the time of the commencement of this action and is not subject to any species of forced sale for the debts of any person."

After the testimony offered on behalf of plaintiff with reference to the motion of Addie Cutler to dissolve the attachment was completed the defendant Addie Cutler demurred to the evidence and moved the court to dissolve the attachment, which motion was by the court sustained.

At the time the court dissolved the said attachment it also denied the application of the plaintiff for a temporary injunction, sustained the motion of defendant Addie Cutler to discharge the garnishment as to her, and sustained the motion of defendant Bud Helm to discharge the garnishment against any property or effects belonging to him, but not as garnishee of the defendant C. H. Cutler.

At the same time the court denied the motion of defendant C. H. Cutler to discharge the garnishment as to him.

Thereupon the plaintiff filed its motion for new trial, which was overruled, exception allowed, and the case is brought to this court for review by the plaintiff.

The petition in error specifies several assignments of error, but counsel for plaintiff in their brief confine their argument mainly if not entirely to the one proposition, that the court erred in sustaining the defendant Addie Cutler's motion to dissolve the said attachment.

The question raised by the motion was that the property attached by the plaintiff was the homestead of defendant and therefore not subject to attachment.

Upon the hearing of this motion to dissolve the attachment it appears from the testimony of plaintiff's witnesses that the Cutlers deposited in the First National Bank of Pauls Valley on June 5, 1923, in the name of Addie Cutler, a draft for $4,000, which was made payable to Addie Cutler and C. H. Cutler, and which draft was a draft on the United States Fidelity & Guaranty Company, paying a loss for the death of their son in the oil fields, which occurred a few months previous to the receipt of this draft; that at the suggestion of Addie Cutler the money was placed in the bank to her credit and C. H. Cutler indorsed the draft.

It further appears from the testimony of plaintiff's witnesses that it was the intention of defendant Addie Cutler to purchase a home with a part of the money which came to her and her husband from the surety company, and her intention to do so clearly appears from her actions and declarations covering a period of more than 30 days prior to the date of her purchase of the same, which was July 9, 1923.

It further appears that Addie Cutler gave her brother, the defendant Bud Helm, on July 3, a check for $3,400, and that on

July 9, 1923, Mr. Helm purchased the property in question for the defendant Addie Cutler, paying therefor $2,000 out of said $3,400.

The evidence further shows that at the time of the purchase the property in question was occupied by tenants, and that the Cutlers could not obtain full possession until August 1, 1923, but as a matter of fact household belongings of the Cutlers were moved into the dwelling house prior to the levy of the attachment, and they resided there from that time on.

A number of decisions of this court are cited in the brief of plaintiff to the effect that the claim of homestead without actual occupancy is insufficient to impress the land with the homestead character, and that the burden of proving the homestead character of land is on the one asserting it. (Merritt v. Park National Bank, 77 Okla. 148, 187 Pac. 232.)

In the case referred to it is said in the opinion:

"In this case the defendants were out of and had never been in possession of the lands involved and there is no evidence tending to show that they ever intended to reside thereon or that they had made preparation or evinced any intention so to do. There can be no homestead where such is lacking."

The evidence in the instant case coming from the plaintiff's own witnesses is of an exact opposite character and renders the case relied upon clearly inapplicable. The other cases cited in plaintiff's brief are, we think, plainly distinguishable from the instant case.

In sustaining the motion of defendant Addie Cutler to dissolve the attachment the court said:

"I don't believe the evidence is sufficient in this case to warrant the sustaining of the attachment. * * * It shows that Mrs. Cutler bought the property before these cases were instituted."

In Williams v. Farmers Gin, 13 Okla. 5, 73 Pac. 269, it is said:

"Applications to dissolve attachments address themselves to the trial court alone, and this court will not undertake to weigh the evidence presented when there is testimony reasonably supporting the findings as made by the trial court."

We have examined all of the testimony introduced and find sufficient evidence to support the order and judgment of the trial court in dissolving the attachment.

It is settled law in this and other jurisdictions that constitutional and statutory provisions relating to homestead exemptions are to be liberally construed in the interest of the family home. Hunter & Hunter v. Griffith, 12 Okla. 436, 72 Pac. 361; Ill. Life Ins. Co. v. Rogers et al., 61 Okla. 43, 160 Pac. 56; Field v. Goat. 70 Okla. 113, 173 Pac. 364, 20 A. L. R. 271; 13 R. C. L. 545.

It is finally contended that the testimony shows a conspiracy to defraud, a malicious scheme concocted by the Cutlers and Bud Helm to evade the binding process of law against money belonging to the defendant C. H. Cutler.

It cannot, we think, be said in the light of the evidence that any money invested in the property purchased and occupied by the defendant Addie Cutler as a family home belonged to the defendant C. H. Cutler.

The $4,000 draft of the surety company was made payable to Addie Cutler and C. H. Cutler. One-half of that sum was used by Mrs. Cutler in the purchase of a home and Mrs. Cutler was not indebted to the plaintiff in any amount at any time so far as we are able to discover from the record before us.

And whether the money that purchased the property in question was the individual money of Mrs. Cutler or belonged exclusively to Mr. Cutler as contended by the plaintiff, in either case that property was acquired and within a reasonable time after its purchase occupied, we think, in good faith as a home for the Cutlers and their children, and therefore protected from any lien, levy, or forced sale by virtue of the provisions of the Constitution and laws of the state relating to homesteads.

The homestead interest is jointly vested in husband and wife though the title to the land may be entirely in one spouse. It is a right jointly vested in the husband and wife for the benefit of themselves and family. Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681; Hunter & Hunter v. Griffith et al. supra.

So far as the defendant Bud Helm, the brother of Mrs. Cutler, is concerned it may be said that his activities consisted in assisting his sister to obtain a home for herself her three minor children. It is true Mr. Cutler placed her funds derived from the surety company on account of the death of her son in her brother's care and control for the purpose of buying a home for herself and family. This the defendant Helm did by having a deed to the property in question made to Mrs. Cutler.

In the order appealed from discharging plaintiff's attachment on the home of Mrs. Cutler the trial court denied the motion of C. H. Cutler to discharge the garnishment as to his individual property if any he has, and also denied the motion of the defendant Bud Helm to discharge him as garnishee of the defendant C. H. Cutler.

The court stated in the order appealed from:

"It is specifically understood that the garnishment served on the defendant, Bud Helm, as garnishee of C. H. Cutler, is in no wise disturbed or modified by this order."

Upon an examination of the evidence contained in the record we think the property in question was not subject to the claim of plaintiff, and that the order and judgment of the trial court dissolving the attachment should be affirmed.

By the Court: It is so ordered.