ILLINOIS OLDSMOBILE COMPANY, Appellant, v. GEORGE A. MILLER et al., Appellees.

**HOMESTEAD:** Abandonment—Conflicting Intent of Husband and Wife. Whether a homestead has been abandoned rests primarily in the intent of the husband, and not in the contrary intent of the wife.

**HOMESTEAD:** Abandonment—Burden of Proof. When a debtor actually removes from his homestead and takes up his residence elsewhere, the burden of proof rests upon him to show that he did not intend a permanent abandonment of his homestead.

**FRAUDULENT CONVEYANCES:** Fraud—Selling Nonexempt Property and Retaining Homestead. It is not a legal fraud, in and of itself,

for a person to dispose of his nonexempt property and retain his exempt property.

Headnote 1:   29 C. J. pp. 936, 964 (Anno.)   Headnote 2:   29 C. J. pp. 961, 962.   Headnote 3:   27 C. J. p. 497.

*Appeal from Delaware District Court.*—E. B. STILES, Judge.

## MARCH 21, 1925.

SUIT in equity, to establish the priority of lien of plaintiff's judgment over an alleged homestead right claimed by the defendants in certain 40 acres of farm land.   There was a decree dismissing the petition, and plaintiff appeals.—*Affirmed.*

*Yoran & Yoran,* for appellant.

*Bronson & Tierney* and *Trewin, Simmons & Trewin,* for appellees.

EVANS, J.—The plaintiff obtained a judgment against the defendant George Miller in March, 1922, upon a promissory note dated in August, 1920.   On both of these dates, Miller and his wife, Harriet, actually resided in the city of Manchester, and had so resided since May, 1918.   Miller was a farmer.   Prior to the latter date, he had for many years occupied and farmed his 120-acre farm, 40 acres of which he was entitled to claim as a homestead.   In May, 1918, he purchased a double house in the city of Manchester, and shortly thereafter he and his wife moved from the farm, into one apartment of such double house.   He rented the other apartment to tenants.   In February, 1922, he sold such duplex apartments, and returned to his farm home. In the meantime, his son had farmed the farm, leasing the same from his father from year to year.   More or less of defendant Miller's personal property, including farm machinery, was left upon the place during the entire period.   Miller testified rather meagerly that, in buying the duplex house, he never intended to make a home there, and that his "intention was to go back and go to farming again."

If, upon the whole record, this testimony is to be believed, it gives a temporary character to the defendant's removal from

his farm. Hutchinson, another judgment creditor of Miller's, testified, as a witness for plaintiff, as to a conversation had with Miller after he moved to Manchester, as follows:

"My conversation with him was that he didn't want to install the house, single or double, until he made up his mind which half of the house he was going to permanently live in; that he expected to make it his home, and he didn't know which part of the house he would occupy. A part of it was to be rented, and whichever part he rented, he was going to do different than he would in his own part of the house, in regard to the way the pipes were installed from the furnace to the house. We didn't do anything in regard to the heating. Do not know how long they lived in that house. That is all the conversation I now recall."

This is relied on by plaintiff as a declaration of intention to make a home in the new house. The conversation is denied by Miller. If this conversation be taken as true, it loses much of its significance by its disclosure that Miller's mind had not, at that time, made a selection of a new home. The fact that the proposed heating was never installed later, suggests that his mind never did settle upon making his home in either apartment. The fact, however, that he did live in one of these apartments for nearly four years is a proper circumstance and a major one, as tending to show the abandonment of the former homestead. On the other hand, Miller has corroboration of his own alleged intention, in the fact that, during the four years of his residence in Manchester, he never voted there. His wife did vote at one election, and stress is laid upon that fact by the appellant, as showing conclusively that the wife, at least, regarded her home as at Manchester.

We think that the defendant husband was not bound by the acts of his wife in this regard; nor was he bound even by her intention, if the same was proved to be contrary to his. He was the head of the family, and the selection of the place of residence rested primarily in his intent. Moreover, the mere fact that she voted would not, of itself, be conclusive as proof of the wife's intention. *Robinson v. Charleton,* 104 Iowa 296.

1. HOMESTEAD: abandonment: conflicting intent of husband and wife.

It is true, as contended by appellant, that, where the judg-

ment debtor has actually removed from the alleged homestead and actually occupied another residence, it becomes incumbent upon him to show that he did not intend a per-manent abandonment of his homestead. He may do this by showing that he had a continued and fixed purpose to return; and such fact may be established by his own testimony as to his own intent. Manifestly, this rule of evidence is a very liberal one toward the homestead claimant; and so it is intended to be. The question of the permanent residence of any person rests primarily in his own actual intent. He has a broad option in the matter, and the rules of law are very liberal in permitting him to make his own choice. We have said that ''equity will not draw very fine sights, when dealing with homestead questions.'' *Lutz v. Ristine & Ruml,* 136 Iowa 684, 686.

2. HOMESTEAD: abandonment: burden of proof.

The force of appellant's argument is directed to two propositions: (1) That the defendant has not met the burden imposed upon him to show that his purpose to return to the former home-stead was continuous and fixed; (2) that the liberality of the homestead law toward the judgment debtor is not such as to tolerate the shifting of his right of homestead by the debtor so as to operate as a fraud upon his creditors. The first of the foregoing we have already considered. The second is entitled to consideration. The plaintiff's debt was incurred in August, 1920. At that time, the defendant had been living in the duplex house for two years. The plaintiff was charged with notice then that the defendant had not necessarily permanently abandoned his right of homestead in the farm. It was at that time a matter of indifference to the plaintiff whether the defendant should claim homestead in the one property or in the other. So far as appears in this record, no difference of value existed between them. This was still the situation in February, 1922, just before the defendant sold the duplex house. If the defendant had truly a fixed and continuous purpose to return to the farm ever since he left it, such purpose would not operate to the detriment of the plaintiff. If any fraud thereby was perpetrated upon the plaintiff, it must have been done subsequently. Miller did subsequently sell the duplex. Was that a fraud upon the plaintiff?

3. FRAUDULENT CONVEYANCES: fraud: selling nonexempt property and retaining homestead.

If we assume that Miller acted exclusively in his own interest, and without regard to the interest of the plaintiff, such interest would impel him to preserve his homestead and to sell his non-homestead property. The sale of the duplex and the return to the farm were, therefore, consistent with the claim of the continuing homestead on the farm.

Moreover, the charge of fraud is first made in appellant's argument. None is charged in the petition; nor does the record disclose any apparent attempt to prove fraud by evidence. It does appear in the background that Rose Webber, who holds one of the mortgages against defendant's farm, and who was the purchaser of the duplex, is the sister of the defendant. A charge of fraud as a tendered issue should be made by frontal attack, and not by innuendo. It is not impossible that a sister should, in good faith, loan money to a brother in financial distress, or that she should purchase his property at a fairer price than a colder purchaser would pay. Surely we will not presume otherwise, in the absence of pleading or proof to the contrary. The only injury inflicted upon the plaintiff was such as inheres in all rights of exemption in favor of a debtor. Their necessary effect is to withdraw the exempt property from the reach of execution. For instance, if the plaintiff had obtained his judgment a few weeks earlier, it would have become a lien either upon the city property or upon the farm in its entirety. Up to that point, the right of the debtor to sell any or all of his property was unimpaired. The sale which he did make was strictly within his rights. Manifestly, if he sold nonexempt property and withheld from sale his exempt property, he thereby put his creditors at a disadvantage. But this was not a fraud.

We are of the opinion that the decree entered below was in line with the great array of our cases on the homestead question. *Boyer v. Dague,* 154 Iowa 67; *Boyer v. Dague,* 167 Iowa 212; *Vittengl v. Vittengl,* 156 Iowa 41; *Schaffner v. Campbell,* 198 Iowa 43.

The decree is, accordingly, affirmed.—*Affirmed.*

All the other justices concur.