## COOPER v. KIESTER.

No. 32957.  Oct. 7, 1947.

*185 P. 2d 458.*

Steele, Daugherty & Downey, of Tulsa, for plaintiff in error.

Wheeler & Wheeler, of Tulsa, for defendant in error.

BAYLESS, J.  Mary Ethel Kiester commenced an action in the district court of Tulsa county on October 5, 1945, to have certain property declared to be her homestead and as such free and clear of an existing judgment lien in favor of the defendant, C. D. Cooper, and against plaintiff and her husband, J. T. Kiester, and to quiet title to the property involved against Cooper. The trial court found that the property was the plaintiff's homestead and rendered judgment in favor of plaintiff, enjoining the defendant from asserting any lien or interest in the property involved. Defendant has appealed from this judgment. Parties will be referred to as they appeared in the trial court.

The evidence shows that plaintiff acquired a 10-acre tract of land just outside the city limits of Tulsa in 1923. At that time plaintiff and her family owned and occupied a home at 1533 South Detroit street in Tulsa. In 1924, or 1925, plaintiff acquired a 14-acre tract of land near the 10-acre tract and she and her husband built a small house

on the 14-acre tract shortly thereafter. They moved into the new house as soon as it was built and resided there until 1934. They would move into the house on South Detroit during the school term so their daughter could attend the city school and move back to the cabin, as it was called, at the close of each school term. Plaintiff testified that for a period of several years they remained at the cabin during the entire year. They purchased an apartment house in Tulsa in 1929. In 1934, they rented the cabin and moved to the apartment house where they resided continuously until 1941, at which time the apartment property was voluntarily conveyed to the mortgagee or sold at foreclosure sale, the record does not show which. Plaintiff and her husband conveyed the apartment property to the mortgagee in 1932, and it was conveyed back to them in 1934. The conveyance was made either directly to plaintiff and her husband and they in turn conveyed to their daughter, or the conveyance may have been made directly to the daughter by the mortgagee. The record is not clear on this point. The house on South Detroit street was sold for delinquent taxes at the 1939 resale and was purchased by plaintiff's unmarried daughter, Dolores Kiester. During the year 1941, they rented property at various places, and in 1942, they returned to their original location at 1533 South Detroit and have lived there ever since with their daughter, Dolores. Dolores has claimed a homestead exemption on the property since 1941. Plaintiff claimed, and the court awarded to her as her homestead, both the 14-acre tract and the 10-acre tract. The 10-acre tract is approximately a quarter of a mile from the 14-acre tract. It has been used for farming and the crops raised thereon were used to feed livestock owned by plaintiff and her husband during the period they were living at the cabin. Plaintiff's husband lost his eyesight in an accident which occurred prior to 1930. Plaintiff testified that they acquired both tracts of land for their homestead; that there has been no change in their intention since the day they bought the property; and that they own no other property at this time.

Plaintiff and defendant were the only witnesses testifying at the trial. Defendant's testimony tends to corroborate that of the plaintiff except as hereinafter noted. Defendant testified that Kiesters moved to the apartment house in 1932, and lived there about eight years, after having lived on the 14-acre tract for approximately one year; that previous to that time they had lived at 1533 South Detroit street; that he has no knowledge of the Kiesters ever having used the 10-acre tract in connection with the 14-acre tract; that there is some evidence, however, of a crop having been raised on about five acres of the 10-acre tract, the other five acres being landscaped. He testified that the 10-acre tract had a present value of $15,000 to $20,000 and the 14-acre tract a value of $40,000.

The question involved is, Were the two tracts of land impressed with a homestead interest at the time defendant recovered judgment against plaintiff herein in 1937, and at all times subsequent thereto? Article 12, §1, of the Constitution, provides:

"The homestead of any family in this state . . . (rural) shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. . . . And Provided, Further, That any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

Section 2 of said article says:

"The homestead of the family shall be, . . . protected from forced sale . . ."

The burden of proof rested with the plaintiff to establish a homestead interest in both tracts of land. We think the evidence fairly shows that plaintiff and her family resided on the 14-acre

tract during the period from 1925 to 1934, and occupied same during this period as their homestead. The evidence fairly established that the 10-acre tract was used in connection with the 14-acre tract to raise feed for their livestock during the time they resided on the 14-acre tract. Plaintiff was asked on cross-examination if the 10-acre tract had ever been used for family purposes. She replied, "Well, unless you would say farming it. We raised our feed and when we lived out there, we raised our feed to take care of our horses and cattle." Defendant contends that this evidence is insufficient to establish use of this tract of land in connection with the homestead. This evidence was not contradicted. Standing by itself we think it was sufficient to justify the holding of the trial court that it was used in connection with, and was a part of, the homestead.

Article 12, §1, of the Constitution, provides that the homestead " . . . may be in one or more parcels, to be selected by the owner."

In Farmers' Exchange Bank of Lindsay v. Cutler, 100 Okla. 193, 229 P. 186, we held:

"Constitutional and statutory provisions relating to homestead exemptions are liberally construed in the interest of the family home."

In Lane et ux. v. Amis Bros. et al., 171 Okla. 593, 43 P. 2d 73, we said, p. 594:

"In the case of White Investment Co. v. Stupart, 152 Okla. 144, P. 2d 77, it is said:

" ' "When a homestead character once attaches to land, it continues to be the homestead until the owner voluntarily changes its character, by disposing of the property, or by leaving with the intention, or forming such an intention after leaving, of not returning and occupying it as a homestead. Temporary absence from a homestead does not constitute an abandonment thereof, where there exists a definite and fixed intention to return. Acquiring the title to the premises occupied as a domicile by the owner of the homestead and his family, in a nearby town, does not amount to such a permanent absence from the homestead as to work an abandonment thereof, so long as the intention to return to the homestead exists." German State Bank of Elk City v. Ptachek, 67 Okla. 176, 169 P. 1094.'

" ' "An abandonment of a homestead is accomplished, not merely by going away without an intention or returning at a particular time in the future, but by going away with the definite intention never to return; the intent of the owner leaving the homestead being the controlling fact." German State Bank v. Ptachek, 67 Okla. 176, 169 P. 1094.' "

See, also, McCammon v. Jenkins, 44 Okla. 612, 145 P. 1163; Brattain v. Hite, 101 Okla. 174, 224 P. 501; and Elliott v. Bond, 72 Okla. 3, 176 P. 242.

Defendant contends that twelve years' unexplained absence from the homestead (assuming a homestead had been established in the two tracts of land) raises the presumption of abandonment. Thompson on Real Property, §996 (934) states:

" . . . The acquisition of a permanent new home has been said to be both the best evidence and conclusive proof of the abandonment of the former homestead. . . . "

Without approving or disapproving this statement of the law, we call attention to the fact that there was no acquisition of a permanent new home in the instant case. Plaintiff's husband, having lost his eyesight, was not employed in a gainful occupation. It is reasonable to assume that they moved into the apartment house in 1934, as a convenience to them in managing and looking after this property. There is no showing that they intended to make this apartment their permanent home or that they intended to abandon their rural homestead. Plaintiff testified that they always claimed the rural property as their homestead. Plaintiff did not explain why they lived away from

the homestead for a period of twelve years. If they had resided in another home rather than in an apartment house during this period, this fact might bring them within the rule stated in Thompson on Real Property, supra, but we do not believe residing in the apartment house for a period of seven years under the existing circumstances is of itself sufficient to do so. There is no showing that they acquired a permanent new home. In Thompson on Real Property, §997 (935), it is said:

" . . . Duration of the absence of an owner may sometimes be evidence of an intent to abandon a homestead, but it is generally true that time alone is rather untrustworthy evidence. . . . . Absence may be temporary even though prolonged, 'temporary' going more to the question of a consistent intention to return than to the matter of the length of the absence. . . ."

We are unable to say that the finding of the trial court is against the clear weight of the evidence. On the contrary, we think the evidence in the record reasonably supports the finding.

The judgment is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, CORN, and GIBSON, JJ., concur.

