ALEXANDER v. LOVE COUNTY NAT. BANK OF MARIETTA.

No. 33840. Sept. 26, 1950.

*223 P. 2d 363.*

Champion, Fischl & Champion, of Ardmore, for plaintiff in error.

C. C. Wilkins, of Marietta, for defendant in error.

JOHNSON, J. This case originated as follows: Plaintiff in error, M. L. Alexander, hereinafter referred to as Alexander, appeals from a judgment holding that he abandoned his homestead and that land composing his homestead had become subject to a lien of a judgment held against him

by the defendant in error, Love County National Bank, hereinafter referred to as Bank.

One O. L. Hankins sued Alexander and the Bank to foreclose a mortgage on land other than the homestead and obtained judgment of foreclosure. Bank holding a second mortgage filed its answer and cross-petition upon which it obtained judgment. The mortgaged property was sold, but the proceeds of the sale did not satisfy Hankins' judgment, leaving the Bank's judgment likewise unsatisfied. An execution was issued on the judgment by the Bank in October, 1934, and levied on the lands of the homestead. Alexander then brought suit against the sheriff to enjoin him from selling his lands, alleging that said lands constituted his homestead and were exempt. Judgment was entered in favor of Alexander, finding that the land at that time constituted his homestead and enjoining the sheriff from selling it. No bond for injunction was filed.

In December, 1947, Alexander leased the land for oil and gas, and the money was placed in the Bank. Bank then sued out a garnishment of the money on its judgment. Alexander moved to discharge the garnishment, asserting that the land was his homestead and the money was exempt, and that this matter had been adjudicated and determined in the injunction proceedings, and that the injunction was still in full force and effect. Upon these issues, after trial, judgment was rendered in favor of the Bank holding that Alexander had abandoned the land as his homestead and that the same was subject to execution, levy and sale to satisfy the judgment of the Bank, resulting in this appeal.

The evidence discloses that Alexander acquired the lands now claimed as a homestead about 1915; that he and his family resided on same until 1929 when he rented the farm, stored some house furniture in one room of the dwelling and some other furniture in the barn; that because of his wife's health he took his family to Lubbock, Texas, where they lived for one year; then moved to Clovis, New Mexico, where they have continued to reside, and the boys now own their homes. Alexander has a home in Clovis, contending that his boys bought it for him and his wife in 1944. Alexander's wife died in August, 1946, and was buried in Clovis, New Mexico, and he has continued to live there.

In 1934 Alexander and one of his boys started a grocery and market in Clovis, prospering from the start. The net assets as of December 31, 1947, amounted to $90,000; that Alexander's share of the profits for 1947 was $5,739.47. In February, 1945, the real property in which the business is operated was bought, and the deed made to Marion and Mack L. Alexander, for which they paid $16,000; that about the time the garnishment herein was issued, Alexander by deed conveyed all his interest in said property to his son Marion, and also, at the same time, conveyed by bill of sale all his interest in the business to his son Marion. These conveyances were without consideration except his son Marion's statement that he orally agreed to support his father the rest of his life; that a part of the terms of said contract was that he would support him in Oklahoma when he returned. In August, 1944, Alexander authorized his agent in Marietta, Oklahoma, to sell the lands involved, but no buyer was found. He stated that he and his wife had often talked about returning to the farm; that they always intended to return, but at the time of the trial had no plans for returning

In October, 1944, Alexander made and filed an affidavit with the election board at Clovis, New Mexico, stating that he was a resident of New Mexico, had been for a year, and has since that time voted in said state.

It is undisputed that the lands here involved constituted the statutory homestead of Alexander and were such

as of the date he moved his family to Texas.

It is the established rule in this state that when the homestead character once attaches to land, it continues to be the homestead until the owner voluntarily changes its character, by disposing of the property, or by leaving with the intention, or forming such intention after leaving, of not returning and occupying it as a homestead. Temporary absence from the homestead does not constitute abandonment where there exists a definite fixed intention to return. It being admitted that the homestead character had once attached to the land and had constituted the homestead of Alexander, the burden was upon the Bank to show that he had abandoned the land as a homestead by leaving with intention, or forming such intention after leaving, of not returning and occupying the premises as a homestead. Brown v. Turner, 201 Okla. 570, 207 P. 2d 927, and cases therein cited. On the question of abandonment of homestead, the intention to abandon is the controlling fact to be determined, and whether a homestead has been abandoned is a question of fact, ascertainable from the circumstances surrounding the particular transaction, to be established in each case by clear and convincing evidence. Lane v. Amis Bros., 171 Okla. 593, 43 P. 2d 73.

It is contended by Alexander that the court erred in the construction of the law, the evaluation of the evidence and in holding that he had abandoned his homestead. In support of this contention, he cites American State Bank v. LeForce, 95 Okla. 88, 218 P. 1073; Elliott v. Bond, 72 Okla. 3, 176 P. 242; First National Bank of Cleveland v. Coates, 65 Okla. 94, 163 P. 714; Lane v. Amis Bros., supra; McCammon v. Jenkins et al., 44 Okla. 612, 145 P. 1163; Russell v. Key, 195 Okla. 49, 155 P. 2d 238; White Investment Co. v. Stupart, 152 Okla. 144, 4 P. 2d 77.

We have carefully examined these cases cited and find the facts distinguishable from the facts presented in the case here.

In White Investment Co. v. Stupart, supra, cited, quoted and relied on by Alexander in his brief because the facts are similar to the facts herein, this court said:

"In the case at bar defendant claimed they had no intention of abandoning the homestead but that they would return to and occupy it whenever possible.

"When husband of the defendant died, she returned his body to Henryetta for burial and buried it in the cemetery at that place.

"We think this a strong circumstance to show that there was no intention to abandon the property in Henryetta as their homestead and that the defendant intended to return to Henryetta and live in said property as soon as conditions were such that she could return."

This case affirms the holding of the trial court. In the case at bar we find no strong circumstance to show that there was no intention to abandon the property as a homestead or that Alexander intended to ever return to the property. The intention of a homesteader to return to and occupy the homestead after the termination of a removal therefrom is to be gathered not only from his declarations, but also from his actions and the surroundings and environment accompanying his absence. 40 C. J. S. Homesteads, §166.

In the case at bar Alexander has been absent from the state for 20 years and left with the hope that the health of his wife would improve to where he could return. This contingency did not occur, and by reason of her death will not. These facts, in connection with his having established a business, a new home, and becoming a legal voting resident, the burial of his wife there (Clovis, New Mexico) and continuing to reside there after her death with no plans to return, all indicate more than a temporary absence with intent to return to and occupy the

premises as a homestead, and are indicative of an intent to abandon it.

Applying the rules announced herein, and this being a case of equitable cognizance, this court on appeal will review and weigh the evidence but will not reverse the judgment unless it can be said that it is clearly against the weight thereof. After carefully examining the record, we cannot say that the judgment is against the clear weight of the evidence, and, having reached this conclusion, we deem it unnecessary to discuss other questions raised by the parties herein.

The judgment is affirmed.

ARNOLD, V. C. J., and CORN, GIBSON, LUTTRELL, and O'NEAL, JJ., concur.