Joseph KUNAUNTUBBEE and Malinda
Kunauntubbee, Plaintiffs in Error,

v.

M. S. GREER, Defendant in Error.

No. 36970.

Supreme Court of Oklahoma.

March 25, 1958.

T. H. Ottesen, Sulphur, for plaintiffs in error.

Harold Springer, Ardmore, for defendant in error.

JOHNSON, Justice.

Plaintiffs in error, Joseph Kunauntubbee et ux., appeal from a judgment of the District Court of Murray County, Oklahoma, in a quiet title action (which action was filed March 9, 1953), wherein the court found that the lands involved did not constitute the homestead of the plaintiffs therein and held valid deeds executed by Joseph Kunauntubbee, as sole owner and sole grantor, in which he, without being joined by his wife, conveyed the fee-simple title to one hundred acres of land to the defendant in error, M. S. Greer. It was contended in the trial court and is contended herein, among other things, that the deeds were void because the lands so conveyed constituted the homestead of plaintiffs and required the signature of Mrs. Kunauntubbee. The defendant in error denied that the lands constituted the homestead of plaintiffs in error, and alleged that if said property ever constituted their homestead that same had been abandoned before the execution of the deeds to the defendant in error.

No one questions the invalidity of the deeds if the lands thereby conveyed constituted the homestead of plaintiffs in error. On the other hand, the validity of the conveyances was clearly established if the property, when conveyed, was not a homestead.

The record discloses that the property involved was the homestead allotment of Joseph Kunauntubbee, a full-blood Chickasaw Indian, and that his wife was a white woman.

The record further discloses that plaintiffs were married in 1910; that they built a home on the one hundred acres in controversy, approximately two miles east of Davis, Oklahoma, and established their residence there in 1911. Four of their five children were born there prior to 1919, when they moved to the home of Joseph's mother adjacent to Davis. The farm was then rented. In 1927 the renter left the farm, and the plaintiffs returned. Joseph's mother died in 1928, and he thereupon became the owner of her home place, sixty acres near Davis, to which the family again moved in 1929. Their last child was born at this residence. The allotment was again rented. They resided at this home until 1944 when they moved to Texarkana, Texas, where Joseph worked at the Red River Arsenal. The plaintiffs lived in an apartment during this two years. In 1945 they returned to Davis and lived in the home inherited from his mother until December,

1946, when they decided to return to Texarkana, Texas. Having already sold parts of his inherited land, they then sold the remainder of the inherited home place and moved to Texarkana, Texas, where they jointly purchased a home. Soon after purchasing this new home they made major improvements on it, consisting of a new room, a front porch and shrubbery and lawn work. They lived there until December, 1950, when they also sold this home and thereafter lived with their children.

In July, 1946, Joseph executed a five-year agricultural lease on his allotment (1947-1951) to one McBride, who thereafter assigned his interest to the defendant. In June, 1950, the defendant paid Joseph $1,000 for an agreement to execute an additional five-year lease upon the expiration of the existing one. This agreement recited that the lessor needed "immediate funds with which to make a purchase of a home." Joseph initiated action, and on September 25, 1951, secured a removal of restrictions on this land, which was effective thirty days thereafter. On October 9, 1951, Joseph executed an unapproved five-year lease to the defendant. On October 26, 1951, Joseph executed a warranty deed purporting to convey this property to the defendant. On November 8, 1951, he executed a second warranty deed conveying this property to the defendant. Joseph admittedly received a total of $4,000 for these deeds but never offered to refund any of it to the purchaser. These instruments were not signed by his wife. This in substance constitutes a chronological statement of the undisputed facts.

The plaintiffs testified that their move nearer Davis was to make it easier for their children to attend school. They also testified that their second move to Texarkana was for employment, and that they never at any time intended to abandon the farm as their homestead. It appears that Joseph's work in and around Texarkana after the second move there was not constant. He was not employed at the Arsenal, but worked as a common laborer or as a woodcutter. The person from whom they purchased their Texas home testified that on separate occasions they individually stated that they "wasn't going back to Oklahoma." Mrs. Kunauntubbee was quoted as saying "they wasn't going back to Oklahoma." Her reason seemed to be that "there was too much drinking up there in Oklahoma." She said if she had to sell the home in Texarkana, Texas, that they were going to move to Dallas. This intention to sell the property and move to Dallas (and not return to Oklahoma) is shown by the letter plaintiffs adduced in evidence from Joseph, Jr., to Joseph, Sr., at a time when he was having difficulty in making the payments on the place, and before they sold the place to Tommie Whiseant and his wife, Jaunita Whiseant.

The testimony of the assistant county assessors of Bowie County, Texas, and the assessments in exhibit for 1949 and 1950 show that homestead tax exemptions were claimed on the Texas property by the plaintiffs, Joseph making the claim one year (1949) and his wife for another (1950). One deputy tax assessor testified in substance that he knew Mrs. Joseph (Malinda) Kunauntubbee, and that he went to their house as deputy tax assessor and found her there; that he asked her if they wanted to designate their property as the homestead; that he remembered talking to her, and that he asked her about the homestead and if she wanted to claim it as a homestead, and she answered and said she did. He further stated that he explained to her (as they always did when they assessed real property) that she could not have a homestead elsewhere, and that she said she understood that, and that she stated to him that she did not have any other homestead.

Joseph Kunauntubbee signed under oath the same form of tax assessment in 1949 as was signed and sworn to by his wife for 1950, and both assessments included the same property, but he claims that he was assessing the property for his

son, Joseph, Jr. However, he executed an affidavit attached to his tax assessment on which he swore that it was his property. The inventory or assessment and affidavit admittedly signed by Joseph, Sr., reads as follows:

"Defendant's Exhibit 'D–1'

Inventory of Property    Owner Joseph Cunningtubby Jr.

Address Rt 6 Bx 836 Texa

and rendered for assessment of Taxes for the year 1949 by ——————— to W. N. McDuffie, Assessor and Collector of Bowie County, State of Texas.

### Real Estate

| Abstract or Lot No. | Cert. Tract or Block | Survey Division or Out Lot | Original Grantee City or Town | Value | Designate Home- stead |
|---|---|---|---|---|---|
| 1–2–3 | 4 | (checked) | Sunny Slope | 4.00 | H.S. |

Supl 48

~~From Joseph Cunningtubby Sr.~~ (Written in pencil and lined out)

Poll————

| | |
|---|---|
| Total Value of Real Estate | 4.00 |
| Value of Personal Property | |
| Grand Total of All Property | 4.00 |
| Total Value for State Tax | |

(Note value of property is admittedly $400, not $4.00)

### List of Personal Property

(This portion of form not executed or used)

| | Value | Tax |
|---|---|---|
| State | | |
| County | | 2.52 |
| Road Dist. No. 1 | | .20 |
| School Dist. No. 12 | | 6.00 |
| Total | | $8.72 |

- - - - - -

State of Texas }
County of Bowie }

I, Joseph Cunningtubby, do solemnly swear (or affirm) that this inventory rendered by me contains a full, true and complete list of all taxable property owned or held by me in my name for ——————— in this county, and personal property not in this county subject to taxation in this county by the laws of this State, on the first day of January, A. D. 1949, and that I have true answers made to all questions propounded to me touching on same, so help me God.

Sign Here — Joseph•Cunningtubby Sr

Subscribed and sworn to before me this 5 day of March, 1949.

W. N. McDuffie,
Assessor and Collector, Bowie County.

By WCS, Deputy (Initialed)

Homestead Oath

State of Texas }
County of Bowie }

I, —————, do solemnly swear (or affirm) that the property designated herein is my Residence homestead; that I do not claim a homestead elsewhere, neither does my spouse claim a homestead elsewhere.

Subscribed and sworn to before me this ——— day of ———, 1949.

W. N. McDuffie

Assessor and Collector, Bowie County

By ————— Deputy

- - - -

(If Unrendered, Assessor Will Fill This Certificate)

I, W. N. McDuffie, Assessor and Collector of Bowie County, do hereby certify that this inventory contains a true and correct list of property subject to taxation in this county for the year or years designated, known as the property of ————— (if owner is unknown, say unknown) which property has not been listed to me for assessment for the year or years designated, and I hereby assess said property for the year or years ——— in compliance with the laws regulating the assessment of unrendered property.

W. N. McDuffie

Assessor and Collector, Bowie County"

This would refute the claim that he was doing so for his son Joseph, Jr.

The pertinent part of the inventory or assessment and affidavit of Mrs. Kunauntubbee reads as follows:

"Defendant's Exhibit 'D–2'

Inventory of Property     Owner Joseph Cunningtubby

Address Rt 6. Bx 840

and rendered for assessment of Taxes for the year 1950 by ——————— to W. N. McDuffie, Assessor and Collector of Bowie County, State of Texas.

Real Estate

| Abstract or Lot No. | Cert. Tract or Block | Survey Division Or Out Lot | Original Grantee City or Town | Value | Designate Home-stead |
|---|---|---|---|---|---|
| 1–2–3 | 4 | (checked) | Sunny Slope | 4.00 | H S |

Poll—————     Total Value of Real Estate     4.00

(Note value of property is admittedly $400 not $4.00)
Value of Personal Property
Grand Total of All Property     4.00
Total Value for State Tax

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

State of Texas    }
County of Bowie   }

I, Mrs. Joseph Cunningtubby, do solemnly swear (or affirm) that this inventory rendered by me contains a full, true, and complete list of all taxabe property owned or held by me in my name for Joseph Cunningtuby in this county, and personal property not in this county subject to taxation in this county by the laws of this State, on the first day of January, A.D.1950, and that I have true answers made to all questions propounded to me touching on same, so help me God.

Sign Here—
Mrs. Joseph Cunningtubby

Subscribed and sworn to before me this 3 day of April, 1950.
W. N. McDuffie,
Assessor and Collector,
Bowie County.
By WCS Deputy (initialed)  *  *  *"

It will be noted that there was no mention of Joseph, Jr. in the 1950 assessment made by Mrs. Kunauntubbee. Only Joseph, Sr. was mentioned as the owner in that assessment.

When Joseph, Sr. was questioned as to whose name the Texas property stood when he signed the 1949 assessment sheet, he admitted that it was in his name and not the name of his son, but testified that they (he and his wife) had made a deed to their son Joseph but had never placed it on record, and that when they sold the home to someone else that he tore up the deed to his son and threw it into the trash barrel and burned it. Obviously, there could be no assessment for Joseph, Jr. under these circumstances.

Plaintiffs, Mr. and Mrs. Joseph Kunauntubbee, Sr., admit that they signed under oath the above noted assessments and accepted the benefits of the Texas homestead exemption laws, and that they jointly owned the Texas property; but in addition to the argument that the 1949 assessment was made in the name of Joseph, Jr. because his name appeared in the upper right-hand corner of the assessment as "owner," thus, as they contend, recognizing his ownership of the property regardless of the fact that Joseph Sr. in the same instrument swore that the property assessed belonged to him, they argue that they signed only the assessments and not the "Homestead Oath" and testified that they did not claim homestead exemption, notwithstanding the fact that the deputy tax assessor swore positively that as a matter of practice they never required property owners to execute the "Homestead Oath" but always questioned property owners under oath as to whether or not they had or claimed another homestead, informing them that they were entitled to only one homestead, and that upon being informed by the property owner that they claimed the property assessed as a homestead and that they had no other homestead, that in assessing they placed under the item "Designate Homestead," the letters "H. S." which designated that the property was claimed as a "Homestead," and which was done in the instant assessments; that they, under this showing, should not be charged as having claimed homestead exemptions, or that they thereby designated said property as their homestead.

The above instruments and testimony were introduced in evidence, along with other evidence, for the sole purpose of throwing light on the question of whether the plaintiffs had abandoned their homestead in Oklahoma, and it was evidently so considered by the trial judge.

■ The only substantial question presented by this appeal is the sufficiency of the evidence to sustain the judgment. In view of the undisputed evidence concerning the occupancy of this property as a home for the plaintiffs from 1911 to 1919, we are convinced that this homestead allotment was impressed with the constitutional homestead exemption at that time. Alton Mercantile Co. v. Spindel, 42 Okl. 210, 140 P. 1168. The homestead, once established, retains its constitutional exemption until the owner voluntarily changes its charac-

ter, either by disposing of the property, with the concurrence of his wife, or by their leaving it with the intention, or forming the intention after leaving, of not returning and occupying it as a homestead. Lane v. Amis Bros., 171 Okl. 593, 43 P.2d 73. Thus, the controlling question here is whether the plaintiffs abandoned their homestead.

An abandonment is established by evidence showing that the owners moved from the premises and formed the intention never to return, and this evidence must be clear, cogent, and convincing. Lane v. Amis Bros., supra. Notwithstanding this, where the party urging an abandonment has met his burden of proof, it is only where the trial court's judgment is against the clear weight of the evidence on this issue that this court can reverse the judgment. Alexander v. Love County Nat. Bank, 203 Okl. 402, 223 P.2d 363. An actual removal from the property having been proved, the only question was one of the intent of the plaintiffs. Intent, being subjective, is established by many factors, such as declarations, actions, surroundings and environment accompanying their absence. It is a question of fact. Id.

In the instant case the facts concerning the intent of the plaintiffs were contested. However, there was proof which fully warranted the trial court in finding that among other things the plaintiffs sold their home in which they had been living near Davis; that they purchased a home in Texarkana, Texas, where they had employment; that they immediately made considerable improvements to this new home; that they claimed the Texas homestead tax exemption on the Texas home, and under oath declared it to be their only homestead; that they openly expressed their intention before disinterested witnesses not to return to Oklahoma; that neither they nor anyone else had lived on the allotment for more than twenty years, and that the house on this allotment, the property sold to Mr. Greer, had been allowed to deteriorate until it was uninhabitable and had been for

years; that Mrs. Kunauntubbee's objection to signing the deed to the allotment was for monetary reasons, rather than a claim of a homestead right. If believed by the court, this was clear, cogent and convincing proof of their intention to abandon the homestead. The trial court was present and had the opportunity to observe the demeanor of the witnesses, their interest or lack of interest, and in general as to who was worthy of belief in the premises. This being so, we cannot say that the judgment under all the facts and circumstances herein is against the clear weight of the evidence.

The rule applicable to the factual situation herein was stated in Alexander v. Love County National Bank, supra, in the third paragraph of the syllabus, as follows:

"In a case of purely equitable cognizance this court on appeal will review and weigh the evidence, but will not reverse the judgment unless it can be said that it is clearly against the weight thereof."

In the body of the opinion we said:

"On the question of abandonment of homestead, the intention to abandon is the controlling fact to be determined, and whether a homestead has been abandoned is a question of fact, ascertainable from the circumstances surrounding the particular transaction, to be established in each case by clear and convincing evidence."

Abandonment having been established, the homestead could only be re-established by acts showing a present intent to reoccupy the farm as their home. Greenwood v. Wilkinson, 124 Okl. 300, 256 P. 46.

Clearly, there was no such showing made in behalf of the plaintiffs in error herein. The judgment of the trial court is affirmed.

CORN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ.

WELCH, C. J., and HALLEY, J., dissent.

HALLEY, Justice (dissenting).

In my judgment the majority opinion misinterprets the inventory of property that Joseph Kunauntubbee Sr. submitted to the county assessor of Bowie County, Texas, in March, 1949. He showed the owner of the property to be Joseph Kunauntubbee, Jr. He did not sign the Homestead Oath. He never said he owned the lots covered by the inventory and I cannot find where Joseph Kunauntubbee Sr. at any time ever claimed this Texas property as his homestead. The property had been turned over to Joseph Kunauntubbee, Jr. This is shown by the fact that on January 13, 1949, Joseph Jr. wrote his mother and father as follows: "Dad if you think you can do good in Dallas I would go, there's no sense in doing without if you can get a job there. I would help you out, but since I'm starting paying for the place, I'm sort of snow *balled*." The son was then in the Navy, stationed at Pensacóla, Florida. That the son took over the property in 1949 is sustained by other evidence.

It is conceded that the homestead allotment of Joseph Kunauntubbee was his constitutional homestead at one time. The claim that it was abandoned as a homestead before the Kunauntubbees went to Bowie County, Texas, was virtually abandoned in the trial of this case and the trial court based his decision not on this point but on the purchase of the Texas property. Certainly the evidence would not justify the release of homestead rights on the record made on this point. The defendant must stand or fall on the proposition that Joseph Kunauntubbee abandoned the Oklahoma homestead by his conduct in Texas. This certainly has not been shown by the Kunauntubbees' dealings with the tax assessor of Bowie County, Texas.

A Mr. Shepard from whom Kunauntubbee purchased this property in Bowie County testified that Joseph told his foreman in his presence that he was not going back to Oklahoma but Joseph denied ever making such a statement. I do not think that even though he made such a statement that that alone would constitute an abandonment of his homestead in Oklahoma. That homestead is not abandoned until a new homestead is adopted and proof of that is utterly wanting here. This question is discussed in Rancho Oil Co. v. Powell, 142 Tex. 63, 175 S.W.2d 960. We said in McCammon v. Jenkins, 44 Okl. 612, 145 P. 1163, that a homestead could not be abandoned without removal with a definite intention to never return. See also Cooper v. Kiester, 199 Okl. 238, 185 P.2d 458. To me it would be grossly unfair to say that Joseph's intention to abandon his homestead in Oklahoma was proven by his statement in answering to "kidding" that he was not going back to Oklahoma. He was a native born Oklahoman with his roots deeply implanted in the soil of Murray County.

I do not think it is necessary to discuss Mrs. Kunauntubbee's statements about the Texas property for the reason that the husband selects the homestead and whatever she said would be immaterial. Illinois Oldsmobile Co. v. Miller, 199 Iowa 894, 202 N.W. 751; Gough v. Gibson, Tex.Civ.App., 1 S.W.2d 684; 40 C.J.S. Homesteads § 164 at p. 641.

We would never say that this Oklahoma property would have been subject to execution for Joseph Kunauntubbee's debts. We should not have one rule for homesteads where property is being sold and another where property is being levied upon under execution. This is what we are doing. I dissent.