**In re Merwyn Lee SIMPSON.**

**Bankruptcy No. 96–71952.**

United States Bankruptcy Court, E.D. Oklahoma.

March 6, 1997.

Jimmy Veith, Ardmore, OK, for Debtor.

Robert Inglish, Okmulgee, OK, for Aspect Technology.

Kenneth G.M. Mather, Tulsa, OK, Trustee.

## ORDER ALLOWING HOMESTEAD EXEMPTION

TOM R. CORNISH, Bankruptcy Judge.

On the 3rd day of February, 1997, the Objections to Claim of Exemption filed by Aspect Technology ("Aspect") and Kenneth G.M. Mather, Chapter 7 Trustee; Response by Debtor; Motion to Modify Stay and Request for Abandonment and Objection by Debtor came on for hearing. Counsel appearing were Jimmy Veith for the Debtor, Robert Inglish for Aspect and Kenneth G.M. Mather, Chapter 7 Trustee. At the conclusion of the hearing, the Court gave the parties until February 10, 1997 to submit additional arguments and authorities, which all parties filed. After a review of the above-referenced pleadings, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr. P., in this core proceeding:

The issue in this case is whether the real property located in Love County is the Debtor's homestead. The real estate was purchased in July 1991. One year prior to purchasing the property, the Debtor owned a business in Plano, Texas. The business was sold to Aspect. After the sale, the Debtor continued to work for Aspect as vice-president of sales. While working for Aspect, he had a bed, shower and refrigerator in an empty office. He did not have a kitchen. At that time, the Debtor spent 75–80% of his time on the road working, 10–15% of his time in his office and 10–15% of his time on the property in Oklahoma.

Approximately fifteen months later, the Debtor had a disagreement with Aspect and his employment with Aspect ended. Thereafter, he spent all of his time on the property in Oklahoma. Seven months later, the Debt-or accepted a position with Ultrak, which is located in Carrollton, Texas. When he first began working for Ultrak, he commuted from Love County to Carrollton, which is approximately ninety miles. After six months, the Debtor began staying with his son, who lives in Carrollton. He spent weekends, holidays and evenings when he could in Oklahoma.

Thereafter, he rented an apartment in Texas. Presently, he stays with his girl-friend in Carrollton and pays rent to her. At the time the Debtor filed bankruptcy, sixty percent of his personal property was in Oklahoma. He has two bedroom suites, a couch, chairs, refrigerator, stereo and television in Oklahoma. In Texas, he has a television, computer, stereo, workstation, chair, ottoman and gunsafe.

The Debtor has made substantial improvements to the property. He has put a new roof on the house, installed a three-car carport, a heat pump and a satellite dish. He has also done some repairs on the property. The Debtor has had continuous utility services to the property since he purchased it in 1991. From his testimony, it is the Debtor's intention for this property to be his home. He is attempting to work out an arrangement where he would be able to work from his home. The Debtor is fifty-three years old and intends to retire on this property. He testified that he filed a claim for homestead in Love County. After the hearing, the Debtor furnished the Court with a copy of his Claim of Homestead Exemption executed January 3, 1994 in Love County.

The Debtor's federal tax returns reflect an address in Texas. The Debtor has never filed Oklahoma tax returns. Texas has no state income tax. The Debtor has two vehicles, a Chrysler New Yorker and Dodge pickup. His New Yorker is tagged in Texas and the pickup is tagged in Georgia. The Debtor has a Texas drivers' license and has never had an Oklahoma drivers' license. The Debtor does his banking in Texas. His mail is sent to a post office box in Dallas, Texas. The Debtor testified that when his bills were sent to Oklahoma, he was getting behind on them. No one else has ever lived on the property and the Debtor has never rented

the property. In the last six months, the Debtor has spent ten weekends in Oklahoma because he has been traveling in his new job.

The Debtor filed this bankruptcy proceeding on September 30, 1996. The meeting of creditors was set on November 22, 1996. The Trustee and Aspect filed timely Objections to Exemptions. Rule 4003(b), Fed. R.Bankr.P. Aspect recovered a judgment for conversion in the amount of $5,000 for compensatory damages and $5,000 for punitive damages. As a result, Aspect is a creditor in this bankruptcy proceeding.

■ The party objecting to the Debtor's exemptions has the burden of proving that the exemptions are not properly claimed. Rule 4003(c), Fed.R.Bankr.P. There is no question that the Oklahoma property became the Debtor's homestead when he left his employment with Aspect and before he began his employment with Ultrak. The issue is whether the Debtor abandoned the Oklahoma property as his homestead. Okla.Stat. Ann tit. 31 § 1(A)(1) (West 1991) provides that the home of a debtor is exempt from attachment, execution or forced sale for the payment of debts, if the home is the principal residence of the debtor. Once property is impressed with homestead character, it continues to be the homestead until the owner voluntarily changes its character, by disposing of it or abandoning it. *Wallace v. Wallace*, 648 P.2d 828 (Okla.1982).

■ Temporary absence from the homestead does not constitute abandonment where there is a definite fixed intention to return to the property. *Alexander v. Love County Nat'l Bank of Marietta*, 203 Okla. 402, 404, 223 P.2d 363, 365 (1950). The objecting party has the burden of proving that the homestead was abandoned by leaving with an intention, or forming the intention after leaving the property, of not returning or occupying the land. *Brown v. Turner*, 201 Okla. 570, 207 P.2d 927 (1949).

■ In the instant case, the Debtor established the Oklahoma property as his homestead when he resided there 100% of the time after he left his employment with Aspect. The Debtor's activities establishing residency in Oklahoma and Texas are as follows:

| | Oklahoma | Texas |
|---|---|---|
| Owns real property | X | |
| Utility Services | X | |
| Registration of vehicles | | X |
| Issuance of drivers' license | | X |
| Address for tax purposes | | X |
| Mailing address | | X |
| Personal property | 60% | 40% |

■ Although the Debtor has many ties to Texas, it is the Debtor's intent which determines whether he has abandoned his homestead. By a preponderance of the evidence, the Debtor did not intend to abandon his homestead. It was merely more convenient for him to spend his weekdays and working weekends in Texas. He intends to return to the property to retire. Further, he hopes to return to his home and work from his home in the near future. The Debtor has never rented the property and has never discontinued the utility services. A temporary absence is not an abandonment of the Debtor's homestead. As a result, the Court finds that the Oklahoma property is the Debtor's homestead.

■ Aspect requests relief from the stay to foreclose on the Debtor's home. Aspect states that there is no equity in the property. In order to obtain relief from the stay, Aspect must show that the Debtor does not have any equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). Section 362(g) provides that the party requesting relief from the stay has the burden of proof on the issue of the debtor's equity. In this case, Aspect did not present any evidence that the Debtor has no equity in the property. As a result, Aspect cannot meet the requirements of § 362(d)(2).

IT IS THEREFORE ORDERED that the Objections to Claim of Exemption are denied.

IT IS FURTHER ORDERED that the Motion for Relief from Stay is denied.