## THE EXCHANGE BANK & TRUST COMPANY *v.* Dorothy J. MATHEWS et al

79-186                                              591 S.W. 2d 354

Opinion delivered December 17, 1979
(In Banc)
[Rehearing denied January 21, 1980.]

*Spencer, Spencer & Shepherd,* for appellant.

*House, Holmes & Jewell,* by: *Charles R. Nestrud,* for appellee.

DARRELL HICKMAN, Justice. In 1973, the appellant bank obtained a $72,000.00 judgment against the appellee, Dorothy Mathews. When Mrs. Mathews' house burned in 1978, the bank attempted to attach her portion of the insurance proceeds and apply them to the judgment debt. The Union County Chancellor held the money was a substitute for her homestead and, therefore, constitutionally exempt from execution by the bank.

On appeal the bank argues the chancellor's ruling was

against the preponderance of the evidence. To agree we would have to find the chancellor's decision to be clearly erroneous. Rules of Civil Procedure, Rule 52. This we cannot do. We affirm the decree.

The essential facts are undisputed. The bank's judgment against Mathews was for a business debt. On May 4, 1978, Mathews' house was destroyed by fire. June 2nd, she was divorced and the chancery court ordered the insurance money on the house to be divided between her and her former husband. There was another party that had an interest in the proceeds who is not a party to this appeal. Neither is her former husband.

June 6th she obtained, from the insurance company, a $10,000.00 advance which she used to make a down payment on a new home. She obtained title to this home on June 9th. She had been told by the insurance company that her temporary living expenses at a motel were getting out of hand and she needed to either rent a house or an apartment. Obviously she decided to buy a house.

On June 16th the bank executed on both the lot on which the destroyed house had stood and her new home. She claimed both properties as her homestead and therefore exempt from execution. ARK. CONST. art. IX, § 3. The chancellor ordered that she had to select one piece of property or the other; she selected her new home. The lot was ordered sold and the bank bought it at a forced sale on July 14th.

July 20th the bank garnished the remaining insurance money which was being held by the insurance company because the exact amount of the loss had not been determined.

She claimed the money was exempt as substituted homestead property.

The matter was submitted to the chancellor on the pleadings and the testimony of an agent of the insurance company.

The chancellor found the insurance proceeds exempt from execution, quoting from the case of *Obenshain* v. *Obenshain,* 252 Ark. 701, 480 S.W. 2d 567 (1972):

When the owner of a homestead voluntarily sells the property, the proceeds of such sale are not exempt. On the other hand, when the property is subjected to a forced sale, the debtor's share of the proceeds *is exempt if he intends to use the money to acquire another homestead.* [Emphasis added by the chancellor.]

The court added:

Mrs. Mathews did in fact use the $10,000.00 she received from the insurance company for the down payment on another home which she claims as her homestead. . . .

The appellant takes the position that Mrs. Mathews should not be allowed to claim both her new home and the proceeds from the old home and that she abandoned her homestead rights to the proceeds when she elected to claim her new home as exempt. Furthermore, appellant argues there was no evidence that she intended to use the money to purchase a new homestead or pay on her newly acquired home.

We disagree. There is no doubt insurance money or proceeds from a forced sale of a homestead are exempt from execution. *Franklin Fire Ins. Co.* v. *Butts,* 184 Ark. 263, 42 S.W. 2d 559 (1931). Furthermore, those proceeds are exempt from execution for a reasonable period of time to allow a person to invest in another homestead. *Simms* v. *McFaddin,* 217 Ark. 810, 233 S.W. 2d 375 (1950).

Mathews never had the money. She invested all she received in a new home and no doubt the chancellor found she intended to do likewise with the remainder. He emphasized language in the *Obenshain* case regarding intent and referred to the fact that she used the $10,000.00 she received to pay down on her new home.

She never abandoned her claim to the lot or the proceeds; she claimed both at every opportunity. While a person cannot have two homesteads at the same time, the law recognizes that a reasonable period of time must be given a person to invest the money in a new homestead. *Simms* v. *McFaddin, supra.*

This whole matter took place over a period of a few weeks during which the property was being divided by the divorce court, subject to attachment, or in the case of the insurance proceeds, subject to a garnishment action.

It is true that Mathews did not testify she intended to invest the remainder of the proceeds in her new home. However, we think that we can fairly conclude that the chancellor found that she intended to use the remainder of the insurance proceeds to pay on her new home. In order to make certain that the law is not perverted by the appellee, we will affirm the decision of the chancellor on the condition that the money is used by the appellee solely to pay for her new home. The chancery court will retain jurisdiction to insure that this happens.

Affirmed.

HARRIS, C.J., not participating.