**In re Terry L. LEWIS, Debtor.**

**Bankruptcy No. 97–01668–R.**

United States Bankruptcy Court, N.D. Oklahoma.

Jan. 12, 1998.

Karen Carden Walsh, Tulsa, OK, for Debtor.

Steven W. Soule', Tulsa, OK, for Movant/Trustee.

Katherine Vance, Asst. U.S. Trustee, Tulsa, OK.

### ORDER DENYING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION

DANA L. RASURE, Chief Judge.

On June 13, 1997, the Chapter 7 Trustee, Steven Soule' (the "Trustee"), timely filed his Objection to Debtor's Claim of Exemption (the "Objection"). A trial on the merits was held on July 21, 1997. The Trustee appeared on behalf of himself. The Debtor, Terry L. Lewis (the "Debtor"), appeared in person and by and through his counsel, Karen Carden Walsh. The Court received evidence in the form of testimony of the Debtor and exhibits introduced by both parties. The parties submitted post–trial briefs. Taking into consideration the pleadings, briefs, and documentary and testimonial evidence, the Court, being fully advised, makes the following findings of fact and conclusions of law.

#### Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334 and 157(b)(2)(B).

#### Findings of Fact

The Debtor filed his Voluntary Petition on April 15, 1997. In his schedules, the Debtor claimed an interest in certain real property situated in Rogers County (the "Real Property"). On "Schedule A—Real Property," the Debtor provided the legal description of the Real Property, described his interest in the property as "J" for "joint," stated that his interest arose by virtue of a warranty deed, and noted "this property was awarded to ex-wife in divorce." On "Schedule B—Personal Property," the Debtor listed as an item of personal property "Lien on ex–wife's home ordered by the Court," at a value of $27,-533.25. On "Schedule C—Property Claimed As Exempt," the Debtor claimed as exempt the "Lien on ex–wife's home ordered by the Court" under 31 O.S.1991, § 1(A)(1) in the amount of $27,533.25 (the "Lien"). The Trustee objected to the exemption claimed in the Lien.

The Debtor was divorced on February 21, 1997, in Rogers County, Oklahoma, after a trial on the merits. The transcript of the decision rendered by Judge Dynda Post was admitted into evidence. Judge Post awarded the Real Property, described as the "residence," to the Debtor's ex–wife, Jo Ellen Lewis ("Ex–Wife"), providing that—

> The property shall be sold upon death of the [Ex–Wife] plus 60 days, remarriage plus 60 days, cohabitation, the graduation of the youngest child from high school plus 60 days or the sale of the property on closing (sic).

Transcript, Debtor's Exhibit 1, at 6. The Court awarded the Debtor—

> a lien of one–half [the adjusted value of the property], which is foreclosable under those five conditions I have just outlined and his lien is in the amount of $27,533.25 or one–half the proceeds of the sale of the house at time of sale. His one–half of the proceeds, however, shall not exceed $27,-533.25.... If the property sells for less than its present evaluation, his lien would be decreased by that amount.

Transcript, Debtor's Exhibit 1, at 6.

The uncontroverted testimony in this proceeding indicates that the Debtor and his Ex–Wife built a home on the Real Property and lived in it as their marital residence for six years. The Debtor moved out of the Real Property in October 1995 as a consequence of marital discord. The Debtor has lived in rental housing since he vacated the marital residence. In April 1997, after the filing of this bankruptcy proceeding, the Debtor en-

tered into a Lease Agreement and Contract for Sale (the "Lease/Purchase Agreement") in connection with a house in Chelsea, Oklahoma, where he currently resides. The Debtor testified that he desires to reinvest the funds he realizes from the Lien in the Chelsea house, which he intends to declare as his new homestead. It was stipulated that the Debtor will not have access to the funds secured by the Lien until one of the conditions set forth by Judge Post occurs, and it is possible that the first condition to occur may be the graduation of the youngest child from high school in eight years.

### Conclusions of Law

The Trustee, as the party contesting the exemption, has the burden of proving that the exemption in the Lien is not properly claimed. FED. R. BANKR.P. 4003(c).

■ The Debtor claims that the Lien constitutes proceeds of the disposition of his homestead and that proceeds of homestead are exempt under Oklahoma law. The Trustee contends that a lien is a non-possessory interest in property and therefore cannot be homestead;[1] that the Debtor abandoned the Real Property and therefore the Real Property lost its homestead character; that the Lien did not arise from the disposition of homestead and therefore is not proceeds of homestead; and that even if the Lien constituted proceeds of homestead, it cannot retain homestead protection from creditors because it is possible that it may not be reinvested in a new homestead within a reasonable time.

### Abandonment

■ The threshold issue is whether the Debtor abandoned the Real Property when he vacated the residence in October 1995. If the Real Property was abandoned by the Debtor, the Court need not decide the question of whether the Lien may be considered homestead or proceeds of homestead.

---

**1.** For this proposition, the Trustee cites *White v. White (In re White)*, 727 F.2d 884 (9th Cir.1984), which held that a lien was not a sufficient ownership interest to constitute homestead under Oregon law. This Court agrees that a lien, as such, cannot be homestead. One cannot reside in a

The Court finds that the Debtor owned the Real Property jointly with his wife and that they occupied the Real Property as their marital residence until he moved out due to marital discord. The Real Property was clearly the Debtor's homestead in October 1995 and exempt from creditors' claims under Oklahoma law. *See* 31 O.S.1991, § 1(A)(1); 31 O.S.Supp.1997, § 2; Okla. Const. Art. 12 § 1, *et seq.*

The Trustee argues that by vacating the Real Property in October 1995, the Debtor abandoned the homestead. Abandonment of homestead is a question of fact ascertainable from the circumstances and must be proved by the party contending abandonment by clear and convincing evidence. *See State ex rel. Means v. Ten (10) Acres of Land,* 877 P.2d 597, 601 (Okla.1994); *State ex rel. Comm'rs of Land Office v. Creswell,* 391 P.2d 220, 222 (Okla.1964); *First National Bank of Sentinel v. Anderson,* 206 Okla. 54, 240 P.2d 1066, 1069 (1952).

■ "Abandonment," in the context of a claim of homestead rights, is a term of art the meaning of which goes beyond the mere vacation of the premises.

> [W]hen the homestead character once attaches to land it continues to be the homestead until the owner **voluntarily** changes its character, by disposing of the property, or by leaving with the intention, or forming such intention after leaving, of not returning and occupying it as a homestead.

*First National Bank of Sentinel,* 240 P.2d at 1069 (emphasis added); *see also Kunauntubbee v. Greer,* 323 P.2d 725, 730–31 (Okla. 1958). Circumstances, among others, that indicate abandonment of homestead include the purchase of a new homestead (*Wallace v. Wallace (In re Wallace),* 648 P.2d 828, 832 (Okla.1982)); relinquishment of title to the property (*Kunauntubbee,* 323 P.2d at 731); and declarations and actions of the parties claiming homestead tending to indicate an

lien. However, like the Ninth Circuit Court of Appeals in *White,* this Court must consider whether the lien constitutes "proceeds" of the disposition of homestead. The Ninth Circuit remanded the case for consideration of that issue.

intent not to return (*Kunauntubbee*, 323 P.2d at 731).

The only evidence presented by the Trustee that the Debtor abandoned his homestead was the fact that the Debtor moved out of the Real Property in October 1995, and never returned before the Real Property was awarded to his Ex–Wife in the divorce. No evidence was offered to show that the Debtor did not intend to return to the Real Property and occupy it as homestead prior to the divorce. For example, the Debtor may have intended to move back in the event of reconciliation with his wife prior to the divorce. Or the Debtor may have anticipated that he would be awarded the Real Property in the divorce, at which time he would reoccupy it as his homestead. Or the Debtor may not have formed any intent one way or the other. Given that the burden is on the Trustee to prove abandonment by clear and convincing evidence, the Court must assume that the Debtor did not intend to abandon the Real Property in absence of affirmative evidence that he formed the intent not to return prior to being divested of the Real Property by Judge Post.

The fact that the Debtor lived elsewhere for the period of time between separation and divorce does not in and of itself constitute abandonment. The Debtor did not purchase a substitute homestead, and therefore the Debtor was not precluded from continuing to consider the Real Property his homestead. *See e.g., First National Bank of Sentinel*, 240 P.2d at 1068 (vacating the homestead and temporarily renting it out does not change the character as homestead so long as no other homestead has been acquired). Nor did the Debtor give up his ownership rights in the Real Property. According to the Debtor's Schedule A, the Real Property is jointly owned. No quit claim deed or recorded decree indicating a transfer of the Real Property of record was produced. Since there is no evidence to the contrary, the Court finds that the Debtor held record title to the Real Property jointly

with his Ex–Wife on the date the Debtor filed his Voluntary Petition herein.

The Court therefore concludes that the Debtor did not abandon the homestead.

**Proceeds**

■ On February 21, 1997, the Real Property, which this Court has determined to be the homestead of both the Debtor and his Ex–Wife, was involuntarily transferred to Ex–Wife. Judge Post awarded the Real Property to Ex–Wife but recognized the Debtor's interest therein by awarding the Debtor the Lien. This Court finds that what Judge Post actually awarded to Debtor was a money judgment secured by the Lien, which judgment is payable only upon the occurrence of one of the conditions set forth by the court (the "Judgment").[2]

The Oklahoma Supreme Court, in *Harrell v. Bank of Wilson*, 445 P.2d 266 (Okla.1968), recognized that a note representing a portion of the proceeds from the sale of a former homestead, secured by the homestead, could constitute proceeds of homestead and thus be exempt. This Court finds that the Judgment constitutes proceeds of the Real Property, just as sales proceeds (whether in the form of cash or a note and mortgage) would constitute proceeds of the Real Property if the disposition had been voluntary. Judge Post awarded the Debtor his half-interest in the Real Property in the form of the Judgment and Lien rather than in kind. This Court finds the Judgment and Lien are proceeds of the Debtor's homestead. The Court further finds that when the Debtor is entitled to execute on the Judgment, the funds acquired in satisfaction of the Judgment will also constitute proceeds of the homestead.

■ Proceeds of the disposition of a homestead retain the homestead protection from creditors if there is a good faith intent to reinvest the proceeds in another homestead and the reinvestment is made within a reasonable time. *See Harrell*, 445 P.2d at 268. The Debtor has stated his intention to reinvest the proceeds in a substitute home-

---

**2.** At the time of the hearing on the Trustee's Objection, no decree of divorce had been prepared or signed. The Court would anticipate that the decree would reflect a property division judgment secured by the Lien. A lien cannot exist without a corresponding obligation, such as a judgment, note or other form of indebtedness.

stead as soon as a condition entitling him to execute on the Judgment occurs. The Debtor demonstrated his intent to reinvest the funds in a substitute homestead by producing the Lease/Purchase Agreement. The Trustee argues that the Lease/Purchase Agreement is not relevant to the Debtor's intent because it was entered into ten days after this bankruptcy proceeding commenced. That fact does not abrogate the Debtor's testimony that he intends to reinvest the proceeds into a substitute homestead. In many cases, all the Court will have is a debtor's testimony regarding intent without any documentation substantiating such testimony. The Court is persuaded by the fact that the Debtor entered into a binding contract to purchase a substitute homestead and concludes that the Debtor possesses the requisite intent.

The Trustee further contends that the Debtor cannot reinvest the proceeds within a reasonable time because it is uncertain when the proceeds will be available to reinvest in a homestead. The time at which the Debtor may obtain the use of the proceeds is not within the Debtor's control, however. This Court agrees with the Ninth Circuit in *White v. White (In re White),* 727 F.2d 884, 887–88 (9th Cir.1984), a case with a very similar set of facts, that the time for determining whether a reasonable time for reinvestment has expired does not begin until the Debtor has access to something that is capable of being reinvested. It would be manifestly unfair to bar the Debtor from using the proceeds from his prior homestead for the purchase of a new homestead because of circumstances over which he has no control.

This Court is obligated under Oklahoma law to construe its homestead laws broadly in favor of the claimant, *see First Bank of Sentinel,* 240 P.2d at 1068, and this Debtor has done nothing volitionally to impair or negate his homestead rights. The Court therefore concludes that the Judgment and Lien are proceeds of the Debtor's homestead and are exempt under the homestead laws of the State of Oklahoma.

The Objection to Debtor's Claim of Exemption is **denied**.

IT IS SO ORDERED.