In re Patricia M. KUJAN, Debtor.

No. 99–34933 (LMW).

United States Bankruptcy Court,
D. Connecticut.

Dec. 11, 2002.

Roberta Napolitano, Bridgeport, CT, Chapter 7 Trustee.

Charles D. O'Hara, Jr., Charles D. O'Hara, Jr., P.C., Bridgeport, CT, for Debtor.

## MEMORANDUM OF DECISION RE: TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF HOME-STEAD EXEMPTION

LORRAINE M. WEIL, Bankruptcy Judge.

The matter before the court is the chapter 7 trustee's (the "Trustee") objection to the above-referenced debtor's (the "Debtor") claim of a homestead exemption under applicable Connecticut law in respect of her former marital residence located at 4634 Black Rock Turnpike in Fairfield, Connecticut (the "Property").[1]

## I. FACTS AND PROCEDURAL BACK-GROUND

The Debtor commenced this chapter 7 case by a petition (included in Doc. I.D. No. 1, the "Petition") filed on November 8, 1999 (the "Petition Date"). Simultaneously, the Debtor filed her schedules and Statement of Financial Affairs (included in Doc. I.D. No. 1, the "Original Schedules").

The Original Schedules state that the Debtor is divorced and has two children: a daughter (age 15 as of the Petition Date); and a son (age 11 as of the Petition Date). (*See* Original Schedules, Schedule I (Current Income of Individual Debtors).) The Petition listed the Debtor's address as 12 Field Street, Seymour, Connecticut. The Original Schedules disclose that the Debtor rents the relevant Field Street premises on a month-to-month lease. (*See* Original Schedules, Schedule G (Executory Contracts and Unexpired Leases).) The Original Schedules state that, as of the Petition Date, the Debtor owned no real property. (*See* Original Schedules, Schedule A (Real Property).) On the Debtor's Schedule B (Personal Property), the Debtor listed as an asset the following: "Alimony $500/mo; Property Settlement: upon sale of marital home when youngest child reaches age 18, debtor will receive $74,000.00." (Original Schedules, Schedule B (Personal Property) at item 16.) The Debtor did not claim either the Property or the referenced "property settlement" as exempt in the Original Schedules. (*See* Original Schedules, Schedule C (Property Claimed as Exempt).) The Debtor received a chapter 7 discharge on February 22, 2000. (*See* Doc. I.D. No. 6.) On February 13, 2002, the Trustee filed a Motion To Administratively Close Case and Reserve Rights to This Bankruptcy Estate with Regard to an As-

---

**1.** This matter is a core proceeding within the purview of 28 U.S.C. § 157(b). This memorandum constitutes the findings of fact and conclusions of law mandated by Federal Rules of Bankruptcy Procedure 9014 and 7052.

set (Doc. I.D. No. 8, the "Administrative Closure Motion"). The Administrative Closure Motion alleges in relevant part as follows:

> 4. There is ... an ... asset [of the estate] consisting of an obligation [the "Obligation"] by the former husband of ... [the Debtor], John Kujan, to pay the estate the sum of $74,000 when ... [the Debtor's son] reaches the age of 18, in 2006, or upon the sale of the [P]roperty ....
>
> .   .   .   .   .
>
> 6. There do not appear to be any other nonexempt assets in this estate, and it would be impractical to keep this estate open until such time as the [O]bligation matures. In the opinion of the ... [Trustee], it would be appropriate to administratively close this estate at this time and to reserve the rights of this bankruptcy estate in and to the ... [O]bligation ....

(Administrative Closure Motion at 1–2.)

The Debtor responded to the Administrative Closure Motion in two ways. First, on February 19, 2002, the Debtor filed an amended Schedule C (Property Claimed as Exempt). (*See* Doc. I.D. No. 14, "Amended Schedule C.") Amended Schedule C claims the relevant exemption as follows: "Equitable Distribution rights to ... [the Property], arising from property settlement agreement with former spouse." (Amended Schedule C.) Under the column responding to Schedule C's direction to "[s]pecify [l]aw [p]roviding [e]ach [e]xemption," Amended Schedule C states: "§ 52–352b(t) [the Connecticut homestead exemption][2]; *In re McCulley*, 150 B.R. 358 (Bankr.M.D.Pa.1993)." (Amended Schedule C.) Amended Schedule C values the

claimed exemption at $74,000 and appears to value the Property itself at $180,000.00 (gross). (*See* Amended Schedule C.)

In addition to filing Amended Schedule C, the Debtor also filed Debtor's Objection to Trustee's Motion To Reserve Rights To Asset (Doc. I.D. No. 13, the "Administrative Closure Objection"). The Administrative Closure Objection alleges in relevant part as follows:

> 2. In ... Amended Schedule C, Debtor ... exempts a property settlement distribution [i.e., the Obligation] due her from her former husband in the amount of $74,000.00 and which was previously disclosed in [Original] Schedule B.
>
> 3. The exemption of $74,000.00 is pursuant to C.G.S. § 52–352b(t)—the Connecticut Homestead Exemption.
>
> 4. Debtor possesses a marital interest in ... [the P]roperty .... Said property was jointly owned by Debtor and her husband, John W. Kujan, prior to their divorce in March, 1999. Pursuant to a property settlement which was incorporated into a divorce decree [the "Decree"] on March 5, 1999, the Debtor quitclaimed her undivided one-half interest in the [P]roperty to her Husband. In return, the Husband agreed to pay Debtor $16,000.00 within 30 days after the ... [D]ecree was entered; and the sum of $74,000.00 when the youngest child reached the age of 18 or when the [P]roperty was sold, whichever occurred first. The total payment of $90,000.00 to the Debtor under the ... [D]ecree represented the Debtor's one-half share in the equity of the ... [P]roperty.
>
> 5. It is the payment of $74,000.00 which has not yet been made by Debt-

2. In the Original Schedules, the Debtor elected her exemptions under Bankruptcy Code § 522(d). (*See* Original Schedules, Schedule C.) In Amended Schedule C, the Debtor

changed her election to her exemptions under Connecticut law. (*See* Amended Schedule C.) *Cf.* 11 U.S.C. § 522(b)(2).

or's former spouse ... which the Debtor exempts pursuant to C.G.S. § 52–352b(t).

.    .    .    .    .

(Administrative Closure Objection at 1.)[3] The Trustee responded to Amended Schedule C by filing the Trustee's Objections to Property Claimed as Exempt (Doc. I.D. No. 15, the "Trustee's Objection"). In the Trustee's Objection, the Trustee objected to the Debtor's claim of homestead exemption under Connecticut law in respect of " '[e]quitable distribution rights to [the Property] ... arising from property settlement agreement with former spouse' " on the grounds that "[t]he Property does not fit ... [the] definition [of homestead under Conn. Gen.Stat. § 52–352a]." (Trustee's Objection.)

A hearing on the Administrative Closure Motion and the Administrative Closure Objection originally was scheduled for March 6, 2002 but was continued by agreement to March 27, 2002.[4] A hearing (the "Hearing") on the Trustee's Objection was held on March 27, 2002. Other than the Trustee's introduction into evidence of two exhibits,[5] no evidence was proffered at the Hearing. Rather, arguments of counsel were heard and a post-hearing briefing schedule was ordered. The court took the matter under advisement pending post-trial briefing and reserved the right to schedule an evidentiary hearing should that appear appropriate after review of the post-trial briefs of the parties. After review of

the parties' initial post-trial briefs, the court issued an order (Doc. I.D. No. 23, the "Briefing Order") directing the parties to submit further briefs on the issue of whether the Obligation might be exempt under the Connecticut homestead exemption statute as proceeds of a homestead. The parties have completed the requested further briefing (the "Further Briefing") in accordance with the Briefing Order and the matter is ripe for decision.

The following facts are undisputed. On or about March 5, 1999, the Connecticut Superior Court dissolved the marriage of the Debtor and her then-husband, John W. Kujan. Prior to institution of those proceedings, the Debtor and her then-husband owned the Property either as joint tenants or tenants-in-common. In the referenced marital dissolution proceedings, the Superior Court issued the Decree incorporating the Stipulation. Among other things, the Stipulation provided that Mr. Kujan would pay, as a "property settlement," the sum of $74,000.00 (i.e., the Obligation) upon the earlier to occur of the Debtor's son's reaching the age of 18 years or Mr. Kujan's sale of the Property. The couple's then minor children were to live with Mr. Kujan at the Property. The Stipulation was recorded in the land records of the Town of Fairfield with respect to the Property. Under the terms of the Stipulation, the Debtor was to quitclaim her interest in the Property to Mr. Kujan. The Debtor subsequently executed and delivered the Quitclaim Deed to Mr. Kujan

3. At the Hearing (as defined below), the Trustee indicated that she contests that as a factual matter the Obligation is (in any relevant sense) proceeds of the Homestead.

4. Pending resolution of the Trustee's Objection, the Trustee has marked the hearing on the Administrative Closure Motion (and the related Debtor objection) "off" with leave to reclaim.

5. Trustee's Exhibit A is a certified copy of the Stipulation (the "Stipulation") filed in the Debtor's marital dissolution proceedings, incorporated into the Decree and filed in the Fairfield town records in respect of the Property. Trustee's Exhibit B is a certified copy of a quitclaim deed (the "Quitclaim Deed") from the Debtor to her former husband, dated March 18, 1999 and filed in the Fairfield Town records in respect of the Property.

which deed was duly recorded in the land records of the Town of Fairfield. The Quitclaim Deed, by its terms, conveyed to Mr. Kujan "all the right, title, interest, claim and demand whatsoever as the ... [Debtor] has or ought to have in or to ... [the Property]." Mr. Kujan did not execute a mortgage in favor of the Debtor to secure his payment of the Obligation to her. As of the Petition Date (which occurred after the date of recordation of the Quitclaim Deed), the Debtor did not occupy the Property, and had no prospect of occupying the Property in the future in that, under the Stipulation, she does not have a right to purchase the Property from Mr. Kujan.[6]

## II. DISCUSSION

What follows is a two-step analysis substantially similar to that used by the court in In re Lewis, 216 B.R. 644 (Bankr. N.D.Okla.1998). The first step in the analysis is to determine whether, as of the Petition Date, the Debtor had an exemptible interest in the alleged homestead Property itself. If the answer to the first question is "no," the second step in the analysis is to determine whether the Obligation might constitute proceeds of a homestead which, as of the Petition Date, themselves were exempt under the applicable homestead exemption. In undertaking the above-described analysis, the court bears in mind the following:

"[E]xemption laws must be liberally construed in favor of a debtor and/or the debtor's family, so that their purposes may be properly effectuated. For this reason, no mere technicality should defeat the right of exemption, and whenever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed. Thus, statutory language should not be restricted in its meaning and effect so as to minimize its operation on the beneficent objects of the statutes. Furthermore, when there is a doubt as to a statute's intent, it should be construed in favor of the debtor, especially in the absence of a clear legislative statement not to favor the debtor, since the creditor is almost always in a better position to protect its interest than is a debtor."

Caraglior v. World Savings & Loan (In re Caraglior), 251 B.R. 778, 782–83 (Bankr. D.Conn.2000) (citations omitted).

### A. Property Qua Property as Exempt

Section 52–352b of the Connecticut General Statutes provides in relevant part as follows: "The following property of any natural person shall be exempt: ... [t]he homestead of the exemptioner ...." Conn. Gen.Stat. Ann. § 52–352b(t) (West 2002).[7] "Homestead" is defined in Section 52–352a of the Connecticut General Statutes in relevant part as follows: " 'Homestead' means owner-occupied real property ... used as a primary residence." Conn. Gen. Stat. Ann. § 52–352a(e) (West 2002). Thus, there are three requisites for real property to constitute an individual's statutory homestead. First, the individual must "own[ ]" the subject real property within the meaning of Section 52–352a as

---

6. On the other hand, under the Stipulation Mr. Kujan can avoid having to sell the Property (which he otherwise is required to do when the couple's son reaches 18 years of age) by satisfying the Obligation from sources other than Property sale proceeds. (See Stipulation ¶ 7.)

7. " 'Exempt' means, unless otherwise specified, not subject to any form of process or court order for the purpose of debt collection ...." Conn. Gen.Stat. Ann. § 52–352a(c) (West 2002).

of the relevant time.[8] Second, the individual must "occup[y]" the subject real property within the meaning of Section 52–352a as of the relevant time. Third, the subject real property must be "used as a primary residence" within the meaning of Section 52–352a as of the relevant time. The Debtor argues that, as of the Petition Date, she had "equitable distribution rights" in the Property and that such constituted a sufficient interest in the Property itself (i.e., Property *qua* Property) to satisfy the "owner[ship]" requirement of Section 52–352a. The Trustee responds that, as of the Petition Date, the Debtor had *no* interest in the Property. For the reasons set forth below, the court agrees with the Trustee.

The short answer to the question of what rights (if any) the Debtor retained in the Property as of the Petition Date is that the Quitclaim Deed had already been executed, delivered and recorded as of the Petition Date. That is significant because the Quitclaim Deed conveyed to Mr. Kujan "*all* the right, title, interest, claim and demand whatsoever as the ... [Debtor] has or ought to have in or to ... [the Property]." (Trustee's Exhibit B (Quitclaim Deed) (emphasis added). *See also* Trustee's Exhibit A (Stipulation) at ¶ 7 ("The Wife shall quit claim her interest in and to said property to the Husband.").) Thus, in the wake of the Quitclaim Deed, the Debtor had no interest in the Property itself, having conveyed it all to Mr. Kujan. *See* Conn. Gen.Stat. Ann. § 47–36f (West 2002) ("A deed entitled 'Quitclaim Deed', when duly executed, has the force and effect of a conveyance to the releasee of all the releasor's right, title and interest in and to the property described therein except as otherwise limited therein, but without any covenants of title.").

An alternative analysis leads to the same conclusion as demonstrated by the following. With respect to any "equitable distribution rights" of the Debtor in respect of the Property, the Superior Court's power to equitably divide marital property arises under Section 46b–81 of the Connecticut General Statutes which provides in relevant part as follows:

> (a) At the time of entering a decree ... dissolving a marriage ..., the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

Conn. Gen.Stat. Ann. § 46b–81(a) (West 2002). However, the process of equitable distribution ceases upon entry of a decree. At that point title to the marital assets is deemed to be "unscramble[d]", *McPhee v. McPhee*, 186 Conn. 167, 170, 440 A.2d 274 (1982),[9] and the rights of the (former) spouses *inter se* as to (former) marital property are deemed to have been fully and finally adjudicated. *See Billings v. Billings*, 54 Conn.App. 142, 148, 732 A.2d 814 (1999) ("General Statutes § 46b–86(a)[10] ... states that the trial court does

---

8. Here, the relevant date for all questions is the Petition Date. *See Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935, 938 (8th Cir. 1990) ("[The debtor's] ... entitlement to a homestead exemption is ... examined under the facts as they existed on ... [the date the petition was filed].").

9. "The purpose of property division [on divorce] ... is to unscramble the ownership of property, giving to each spouse what is equitably his." *Id.* (internal quotation marks omitted).

10. Section 46b–86 of the Connecticut General Statutes provides in pertinent part:

not have the authority to modify a property settlement entered into pursuant to § 46b–81 .... By its terms, ... [Section 46b–86(a) ] deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under General Statutes § 46b–81.") (internal quotation marks and footnotes omitted). Thus, even if the institution of marital dissolution proceedings creates an "equitable distribution right" that constitutes a property interest in specific realty under Connecticut law (a point which the court does not decide), entry of a decree in those proceedings terminates any such right leaving only the rights as they are after adjudication by the Superior Court. The question then becomes: what were those rights as of the Petition Date?

■ It is uncontested that the Debtor did not have record title to the Property as of the Petition Date. It also is uncontested that the Debtor does not have a mortgage in respect of the Property to secure the Obligation. *Cf. Jetmore v. Jetmore*, 6 Conn.App. 632, 636, 507 A.2d 116 (1986) (court ordered wife to quit claim her interest in marital property to husband in return for mortgage note and deed for $25,000.00 payable with interest at seven percent per annum over seven years; "[s]uch encumbrances upon real estate are

common and sanctioned ... [by Connecticut Supreme Court case authority]."). The Debtor does not argue that the Decree and the Stipulation provided for a lien on the Property.[11] At best, the Decree and the Stipulation might be deemed to provide for some sort of an assignment to the Debtor of the proceeds of a future sale of the Property. However, even if that were so (a point which the court does not decide), such an assignment would create an interest in sale proceeds only, not the Property itself. Accordingly, for all of the reasons stated above, the court concludes that, as of the Petition Date, the Debtor did not "own[ ]" the Property within the purview of Section 52–352a.[12]

The Debtor relies upon *In re McCulley*, 150 B.R. 358, to support her claim of exemption here. In *McCulley*, title to the subject realty had been solely in the wife's name. Then, divorce proceedings ensued. Subsequently, the husband and wife (not yet divorced)· became joint chapter 7 debtors. A postpetition order was issued in the divorce proceedings awarding a one-half interest in the subject property to the male debtor. The male debtor sought to exempt that one-half interest in the subject property in his bankruptcy case pursuant to Bankruptcy Code § 522(d)(1). The female debtor also asserted a Section 522(d)(1) exemption in respect of that

(a) Unless and to the extent that the decree precludes modification, ... any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party .... *This section shall not apply to assignments under section 46b–81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law.*

Conn. Gen.Stat. Ann. § 46b–86(a) (West 2002) (emphasis added).

**11.** Such an argument arguably would be unavailing in any event. *See In re Lewis*, 216 B.R. at 647 n. 1 (citing *White v. White (In re White)*, 727 F.2d 884 (9th Cir.1984), for the proposition that "a lien ... [is] not a sufficient ownership interest to constitute [a] homestead under Oregon [and Oklahoma] law.").

**12.** Because the court concludes that, as of the Petition Date, the Debtor had no interest in the Property itself, it is unnecessary for the court to determine what minimum quantum of interest in realty is necessary to satisfy the statutory requirement of "owner[ship]."

property. The court held that, as of the petition date, the male debtor had no interest in the realty itself but was a mere unsecured creditor in his former wife's case with a claim for the value of the "one-half interest." As such, he was entitled to share with the female debtor's other unsecured creditors in her estate after giving effect to *her* valid exemption in respect of the subject property under Bankruptcy Code § 522(d)(1). *McCulley*, 150 B.R. at 360–61. Further, the *McCulley* court ruled (without citation of authority), that

> [t]o the extent that Richard McCulley benefits from this distribution [from his former wife's estate], it seems reasonable to conclude that the exemption available to him under 11 U.S.C. § 522(d)(1) would ... be available to him to protect as much as seven thousand five hundred dollars ($7,500.00) before ... [his own] creditors ... are entitled to share in any part of the Richard McCulley distribution.

*McCulley*, 150 B.R. at 361.

Since the *McCulley* court held that, as of the petition date, Mr. McCulley was a mere unsecured creditor in his former wife's bankruptcy case, *McCulley* is not helpful to the Debtor in her argument that she had an exemptible interest in the Property itself as of the Petition Date. To the extent that *McCulley* stands for the proposition that proceeds of a Section 522(d)(1) "residence" (at least under cer-tain circumstances) may be exemptible under Bankruptcy Code § 522(d)(1), that holding is not dispositive here because the statutory framework being construed is not Section 522(d)(1) but, rather, the Connecticut homestead exemption.

**B.** *Proceeds of the Property As Exempt*

Pursuant to the Briefing Order, the court directed the parties to address the question of whether the Obligation might be exempt under the Connecticut homestead exemption as proceeds of the Debtor's homestead.[13] The parties responded to the Briefing Order with the Further Briefing. What follows is this court's analysis of the "proceeds" issue based upon the Further Briefing and this court's own research.

■ Neither Section 52–352a nor Section 52–352b expressly address the issue of when (if ever) proceeds of a homestead themselves might be exempt pursuant to the homestead exemption. The parties have not identified nor has this court located any Connecticut state or federal court decision(s) which deal directly with that issue. However, the legislative history behind the 1993 enactment of the Connecticut homestead exemption makes clear that proceeds of a *voluntary* sale of the homestead are not exempt. *See An Act Concerning Homestead Exemption for Residential Real Property: Hearing on H.B.*

---

**13.** The court will assume (for present purposes only) that the Property was the Debtor's statutory homestead immediately prior to the time at which she was divested of her interest in the Property pursuant to the Decree. *Compare Connecticut Nat'l Bank N.A. v. Harding*, No. CV 92–0291955, 1994 WL 174676 (Conn.Super.Ct. Jan.10, 1994) (proceeds from the sale of real property not exempt under Connecticut homestead exemption because the subject real property itself was not a statutory homestead at time of sale (or any other time); "[w]hat now exists and has existed since well *before* the effective date [of the 1993 homestead exemption statute] ... is a bank account, not a piece of real estate.") (emphasis added) *with In re Lewis*, 216 B.R. at 647–48 (in the absence of proof of intent to abandon, court concluded that (even though the debtor was living elsewhere as a consequence of marital discord at the time of entry of such decree) the subject property was the debtor's homestead immediately before the debtor's interest in the same was awarded to his wife in divorce proceedings).

*5307 Before the Connecticut General Assembly*, 36 H.R. Proc., Pt. 30, 1993 Sess., p. 10848–849 (1993) (statement of Rep. Samowitz) ("Under this system here, if you owe a debt and you don't pay somebody and ... [that person] goes to court and puts an attachment on your property and you want to sell your house, you still have a lien on your house so ... in order to release the lien, [you] would have to pay that off."). Materially similar homestead exemption statutes in other jurisdictions have been so construed. *See, e.g.,* 40 Am. Jur.2d *Homestead* § 43 (2002); *Drennen v. Wheatley*, 210 Ark. 222, 195 S.W.2d 43 (1946). However, at least some courts take a more liberal view of the applicability of the homestead exemption to sale proceeds when the sale of the homestead is deemed to have been forced or involuntary rather than voluntary. *See, e.g.,* 40 C.J.S. *Homesteads* § 46 (2002); *Exchange Bank & Trust Co. v. Mathews*, 267 Ark. 415, 591 S.W.2d 354, 356 (1979) ("There is no doubt insurance money or proceeds from a forced sale of a homestead are exempt from execution .... Furthermore, those proceeds are exempt from execution for a reasonable period of time to allow a person to invest in another homestead."). Courts also have exercised varying degrees of liberality in construing what constitutes an "involuntary" or "forced" sale (as distinguished from a voluntary sale) for homestead exemption purposes. *See, e.g.,* 40 C.J.S. *Homesteads* § 46.[14] *Compare Obenshain v. Obenshain*, 252 Ark. 701, 480 S.W.2d 567 (1972) (strictly construing what constitutes an involuntary or forced sale) *with In re Cole*, 93 B.R. 707 (9th Cir. BAP 1988) (liberally construing what constitutes an involuntary or forced sale).

Pursuant to the Briefing Order, the Debtor expressly was given the opportunity to argue that the subject transfer by the Debtor was involuntary rather than voluntary and that different rules govern proceeds of involuntary (as opposed to voluntary) transfers under Connecticut homestead exemption law. (*See* Briefing Order at n. 2.) The Debtor elected not to do that. (*See* Doc. I.D. Nos. 25, 26.) Accordingly, the Debtor is deemed to have waived that argument. Thus, it is unnecessary for this court to reach the issue of whether, in appropriate circumstances, the Connecticut courts would hold that proceeds of an involuntary transfer of a homestead are exempt under the statute, and, if so, whether the Connecticut courts would deem the subject transfer to be involuntary rather than voluntary and otherwise to satisfy requirements for the exemption. Accordingly, based upon this court's conclusion set forth above that the Connecticut courts (based on the stated intent of the Legislature) would not construe the proceeds of a *voluntary* transfer of a homestead to be exempt, the Objection must be sustained.[15]

## III. CONCLUSION

For the reasons discussed above, a separate marginal order will enter sustaining the Objection.

---

14.

The rule as to ... [forced or involuntary] sales, with its limitations, has been applied to money paid by way of damages awarded in condemnation proceedings for a right of way over the homestead premises, to the proceeds of a sale under foreclosure of a mortgage or deed of trust of the homestead premises, to the proceeds of a partition sale of the homestead premises, and to proceeds realized from the sale or involuntary transfer of a homestead pursuant to a divorce decree.

*Id.* (footnotes omitted).

15. The court has considered the Debtor's other arguments and finds them unpersuasive.