**KLC, INC., Keystone Leasing, Plaintiff–Appellee,**

v.

**Cynthia TRAYNER, Defendant–Appellant.**

**Docket No. 04–1404–CV.**

United States Court of Appeals, Second Circuit.

Submitted Jan. 31, 2005.

Decided Sept. 27, 2005.

Lloyd L. Langhammer, Norwich, Connecticut (O'Brien, Shafner, Stuart, Kelly & Morris, P.C., Norwich, Connecticut, of counsel), for Defendant–Appellant.

Christopher G. Winans, Danbury, Connecticut (Burrell & Winans, Danbury, Connecticut, of counsel), for Plaintiff–Appellee.

Before: WALKER, Chief Judge, CARDAMONE, Circuit Judge, and OWEN *, District Judge.

CARDAMONE, Circuit Judge.

On June 12, 2003 plaintiff KLC, Inc., Keystone Leasing (KLC or plaintiff), a foreign corporation, filed a diversity complaint in the United States District Court for the District of Connecticut (Underhill, J.) pursuant to 28 U.S.C. § 1332 against defendant Cynthia Trayner (defendant or appellant) to enforce a judgment lien. The district court entered a default judgment against Trayner on September 25, 2003. After receiving KLC's motion for a judgment of strict foreclosure, Trayner opposed that motion and moved to set aside the default judgment taken against her. The district court on February 4, 2004 granted plaintiff's motion and denied defendant's motion. In her brief on appeal, Trayner appears to challenge the default judgment entered against her by the district court. Because she has failed to present any arguments for setting aside the default on this appeal, we will not disturb this order of the district court. However, Trayner also urges, and we agree, that any judgment of foreclosure is subject to the Connecticut homestead exemption set forth in Conn. Gen.Stat. Ann. § 52–352b(t) (West 2005). Hence, we reverse and remand.

## BACKGROUND

Cynthia Trayner owns a condominium and parcel of land in the town of Thompson, Windham County, Connecticut. Prior to the commencement of this litigation, KLC filed a complaint against Trayner, and others, in the Superior Court for the State of Connecticut. *K.L.C., Inc., Keystone Leasing v. Trayner Transport,* No. CV 02 0820175S. On March 31, 2003 the state court entered a judgment in the amount of $101,628.45 in favor of KLC against Trayner and her co-defendants. Accordingly, on April 28, 2003 KLC filed a judgment lien against Trayner's condominium. This lien was recorded in the Thompson County land records office.

Both parties recognize that there are a number of encumbrances on the property,

---

* Hon. Richard Owen, United States District Court for the Southern District of New York, sitting by designation.

which are prior in right to KLC's judgment lien. These include taxes, common expenses assessed by the condominium association, another judgment lien in favor of Roncalli Health Care–Danielson, LLC (Roncalli) in the amount of $53,729.90, as well as a mortgage, in the original principal amount of $59,000. The value of Trayner's property is assessed at $155,000.

KLC is currently the holder and owner of the judgment lien recorded in Thompson County. It began the instant action to enforce its judgment lien, seeking foreclosure of the lien as against the condominium property, interest, a deficiency judgment, costs, appraisal fees, possession of Trayner's property, attorney's fees, and other equitable relief. Because Trayner failed to appear timely, the district court entered a default judgment against her. KLC then moved for a judgment of strict foreclosure. Trayner opposed this motion and moved to set aside the default judgment, declaring that she was unaware that KLC could foreclose on her home. On February 4, 2004 the district court denied Trayner's motion to set aside the default and granted KLC's motion for a judgment of strict foreclosure in two separate orders, and entered a judgment in plaintiff's favor from which defendant appeals.

## DISCUSSION

■ On appeal Trayner contends that the district court erred in withholding her $75,000 homestead exemption. In response, KLC asserts that a judgment lien reduces the equity available under Connecticut's homestead exemption statute, Conn. Gen.Stat. § 52–352b(t). Because the issue on appeal involves the interpretation of a state statute and the definition of its terms presents a question of law, we review the trial court's ruling *de novo*. *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 249 (2d Cir.2004).

American exemption laws have a long history, which is rooted in the English common law. By some accounts, they sprang up in this country as states sought to entice settlers to move west with the lure that their home farms would be exempt from creditors. Today every state protects a portion of a debtor's assets from creditors. Richard M. Hynes, Anup Malani & Eric A. Posner, *The Political Economy of Property Exemption Laws*, 47 J. Law & Econ. 19, 19, 22–24 (2004). Exemption laws that protect real and personal property assets of a debtor vary greatly in their breadth and scope. *See* Lawrence Ponoroff, *Exemption Limitations: A Tale of Two Solutions*, 71 Am. Bankr.L.J. 221, 222 (1997) (describing enormous differences between homestead exemptions amongst the states).

Connecticut's homestead exemption laws can be traced back at least to 1885. *See* Mary Moers Wenig, *The Marital Property Law of Connecticut: Past, Present and Future*, 1990 Wis. L.Rev. 807, 858 n. 228 (*citing* Conn. Gen.Stat. § 2783 (1887)). Connecticut became one of only six states that did not offer protection for a debtor's residential property when, in 1958, the Connecticut legislature repealed the state's $1,000 homestead exemption. *See Gernat v. Belford*, 192 B.R. 601, 603 (D.Conn. 1996); Wenig, *supra* (citing 1958 Conn. Pub. Acts 27, § 42 (Spec.Sess.)) (repealing Conn. Gen.Stat. §§ 7153 and 7154 (1949)). But, in 1993 the legislature reversed course and enacted Public Act Number 93–301(Act), which amended Chapter 906 of the Connecticut General Statutes. *Gernat*, 192 B.R. at 603. Within these revised sections is the current homestead provision, which limits the "exempt" amount to $75,000. *See* 1993 Conn. Acts 93–301, § 2 (Reg.Sess.) (codified as amended at Conn. Gen.Stat. Ann. § 52–352b(t) & n. 10 (West 2005)) (homestead exemption).

Chapter 906 of the Connecticut General Statutes, entitled "Postjudgment Procedures," relates to the enforcement of money judgments. Under this chapter, a judgment creditor may enforce a money judgment by execution or foreclosure "against any property of the judgment debtor unless the property is exempt from application to the satisfaction of the judgment under section ... 52–352b [, the homestead exemption,] ... or any other provision of the general statutes or federal law." Conn. Gen.Stat. Ann. § 52–350f. Under the homestead exemption, Connecticut law protects a judgment debtor from court ordered debt collection of the homestead equity up to $75,000. *Id.* § 52–352b(t). "Homestead" is defined in relevant part as "owner-occupied real property ... used as a primary residence." *Id.* § 52–352a(e); *see also In re Kujan,* 286 B.R. 216, 220–21 (Bankr.D.Conn.2002) (setting out "homestead" requirements for invocation of homestead exemption). The statute defines equity as "the fair market value of the real property less the amount of *any statutory or consensual lien* which encumbers it." Conn. Gen.Stat. Ann. § 52–352b(t) (emphasis added). The Act also reenacted several definitions, including the definition of "exempt" as "not subject to any form of process of court order for the purpose of debt collection." *Id.* § 52–352a(c).

Connecticut's courts have interpreted these statutory provisions to mean that a judgment lien can attach on a homestead, but that such a lien cannot be enforced up to the amount of the exemption. *L. Suzio Asphalt Co. v. Ferreira Constr. Corp.,* 10 Conn. L. Rptr. 264, 1993 WL 448441 (Conn.Super.Ct. Oct. 19, 1993) 1993 Conn.Super. LEXIS 2750, at *5–*6; *accord Shockey v. Everett,* 2000 WL 277181 (Conn.Super.Ct. Mar. 1, 2000) 1993 Conn. Super. LEXIS 576, at *1–*2.

Trayner argues the district court erred in its interpretation of the Connecticut General Statutes in failing to "carve out" the value of her homestead exemption and that any judgment of foreclosure be subject to the protected amount of $75,000. Conn. Gen.Stat. Ann. § 52–352b(t). KLC does not dispute that Trayner's condominium is her "primary residence" and thus falls within the homestead exemption. Instead, it contends there is no equity left in the property to protect because the mortgage and the judgment liens against the property are subtracted from the property value before the homestead exemption attaches. The amount available under the exemption is $75,000, excluding the amount of "statutory or consensual liens." *Id.* Plaintiff specifically avers that the term "statutory lien" encompasses the judgment liens owned by it and Roncalli so that these liens reduce the value of Trayner's condominium, leaving nothing to protect under the homestead exemption. It posits the following

| | |
|---|---|
| Value | $ 155,000.00 |
| Less Taxes, etc. | (125.00) |
| Less Mortgage | (59,000.00) |
| Less Roncalli lien | (53,729.90) |
| Less KLC lien | (101,628.45) |
| Equity available for homestead exemption | $ (59,483.35) |

■ For the reasons discussed below, we believe a judgment lien is not a "statutory lien" as contemplated in the homestead exemption. Thus, it is improper to subtract the Roncalli and KLC liens from the value of Trayner's condominium in order to arrive at the amount available for the homestead exemption. The revised equation, leaving the Roncalli and KLC liens out of the calculus, results in $95,875.00 in equity available for the homestead exemption, thus affording Trayner the full $75,000 statutory amount.

In determining the meaning of state law, we must carefully predict how the state's

highest court would rule if confronted with the issue, including how it would resolve any ambiguity in the statute. *Sprint PCS LP v. Conn. Siting Council,* 222 F.3d 113, 115–16 (2d Cir.2000). In so doing, we consider all sources available to that court, *see Leon's Bakery, Inc. v. Grinnell Corp.,* 990 F.2d 44, 48 (2d Cir.1993), and employ traditional tools of statutory interpretation, *see, e.g., Bank of N.Y. v. Amoco Oil Co.,* 35 F.3d 643, 650–55 (2d Cir.1994).

Our analysis begins by examining the text and structure of the statute itself. *See Whitfield v. Scully,* 241 F.3d 264, 275 (2d Cir.2001). All parts of a statute must be read as a whole so one part is not found to be in conflict with another part, but also read to give meaning to each. *See Pintavalle v. Valkanos,* 216 Conn. 412, 581 A.2d 1050, 1053 (1990). Further, statutes should be construed so as to attain a coherent result and to effectuate the purpose the legislature sought to achieve; an absurd result signals an erroneous construction. *See In re Valerie D.,* 223 Conn. 492, 613 A.2d 748, 769 (1992); *Jones v. Mansfield Training Sch.,* 220 Conn. 721, 601 A.2d 507, 509 (1992).

In addition, in attempting to construe the Connecticut homestead exemption, we must bear in mind the firmly established canon of interpretation instructing that, in order to effectuate the purpose of exemptions, such laws are to be liberally construed in favor of the debtor. *Caraglior v. World Sav. & Loan (In re Caraglior),* 251 B.R. 778, 782–83 (Bankr.D.Conn.2000). "For this reason, no mere technicality should defeat the right of exemption, and whenever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed." *Id.* at 783.

The Connecticut General Statutes do not define "statutory liens," and there is no Connecticut case directly addressing the scope of "statutory liens" as contemplated in the homestead exemption provision. However, the subtraction of judgment liens from the "homestead equity" available to appellant would ignore the overall statutory scheme within which the homestead exemption was codified. Connecticut's exemption is contained within the chapter of the General Statutes that prescribes postjudgment procedures. "Under state law, there is no avenue for a judgment creditor to enforce a claim against real property other than by obtaining a lien." *Gernat,* 192 B.R. at 605. Thus, when the Act defines "exempt" property as that which is not subject to court-ordered debt collection, Conn. Gen.Stat. Ann. § 52–352a(c), it becomes clear that the purpose of the homestead exemption is to prevent creditors from enforcing judgment liens against the property. *Gernat,* 192 B.R. at 605. It would lead to an absurd result to then reduce the amount available under the homestead exemption by the amount of the judgment lien because that result would thwart the core purpose of the exemption.

Given this statutory structure, "statutory liens" cannot be read to include the category of liens available to judgment creditors. Connecticut's Uniform Fraudulent Transfers Act lends some support to this conclusion in that it delineates between judgment liens and statutory liens. Conn. Gen.Stat. Ann. § 52–552b(8) (" 'Lien' ... includes ... a judicial lien obtained by legal or equitable process or proceedings, a common law lien *or* a statutory lien." (emphasis added)).

Similarly, the United States Bankruptcy Code differentiates between these different types of liens. *See* 11 U.S.C. § 101(36), (53). "The Code ... contemplates that liens created consensually ... or by judicial action (such as judgment

liens ...) are not 'statutory liens,' while liens that come into being as a result of statutory operation, without consent or judicial action, are 'statutory liens.'" *Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 94 (2d Cir.1994). Although definitions in the United States Bankruptcy Code are of course not binding upon the Connecticut legislature, it is reasonable to conclude that, given the homestead provision's substantial interaction with the Code, *see* 11 U.S.C. § 522(b)(1), (2)(A) (allowing a debtor to exempt property of the bankruptcy estate pursuant to the exemptions provided by the state of the debtor's domicile), the Connecticut legislature intentionally mirrored, or was at least influenced by, the definitional dichotomy presented in the Bankruptcy Code.

While Connecticut courts have not directly confronted whether judgment liens are statutory liens, at least one superior court has maintained a distinction between the two types of liens, while also recognizing their similarities. *See Linden Condo. Ass'n, Inc. v. McKenna*, 1997 WL 688783, (Conn.Super.Ct. Oct.28, 1997) 1997 Conn.Super. LEXIS 2892, at *7–*9 ("[T]he statutory lien in the present case is more like a judgment lien than a mortgage.").

At the same time, the Connecticut Superior Courts, instead of holding that judgment liens must first be subtracted from the fair market value of the property, uniformly allow the homestead exemption before ordering foreclosure on a judgment lien. *See Konover Constr. Corp. v. Silberstein*, 2003 WL 21805576 (Conn.Super.Ct. July 22, 2003), 2003 Conn.Super. LEXIS 2076, at *5 (determining defendant's homestead up to a value of $75,000 was exempt from a judgment lien); *Martone–Rosato v. Guardiano–Neizwanger*, No. CV000438713 (2001), 2001 Conn.Super. LEXIS 1294, at *2 (same); *see also Phillips v. Phillips*, 2004 WL 503905 (Conn.Super.Ct. Feb.25, 2004), 2004 Conn.Super. LEXIS 456, at *2 (implying that property would have been exempt from a judgment lien had the defendant shown that such property was his primary residence).

A few other jurisdictions, however, have recognized that judgment liens were created by the legislature and are thus statutory in nature. *See, e.g., Dyer v. Beverly & Tittle, PA*, 777 So.2d 1055, 1058 (Fla.Dist. Ct.App.2001) (" 'At common law, except for debts due the King, the lands of a debtor were not liable to the satisfaction of a judgment lien against him, and consequently, a judgment did not operate as a lien on the real estate of the debtor. *Judgment liens on land are statutory liens and their existence depends upon the legal effect of the statute by which they are created.*' "); *Green v. Marks*, 25 Ill. 221 (1861) ("If lands may be seized and sold in Great Britain ... it is by virtue of a modern statute, which has never had any operation in this State, and not by means of the common law."). The Connecticut Supreme Court itself has stated that "[j]udgment liens are creatures of statute" and that "they did not exist before [their enactment by statute in] 1878." *Mac's Car City, Inc. v. DiLoreto*, 238 Conn. 172, 679 A.2d 340, 344 (1996). However, such observations were in regard to whether the legislative requirement that a judgment creditor file a judgment lien within four months of a prejudgment attachment to allow the judgment lien to relate back applies where an appeal is taken. The court's comment regarding the statutory nature of the judgment lien related only to its holding that the legislative requirement must be complied with regardless of an appeal. *See id.* at 345. Although these cases opine on the historic origins of judgment liers and discuss the relationship between such liens and the common law, they provide little insight into the analytically distinct inquiry of the proper categoriza-

tion of a judgment lien under the homestead exemption.

Indeed, one Court of Appeals confronted with a similar question has noted that although judgment liens are creatures of statute, it is important to look at the statutory scheme to determine whether they are in fact "statutory liens" as contemplated by the legislature. *Brookhaven Bank & Trust Co. v. Gwin,* 253 F.2d 17, 19–20 (5th Cir.1958); *cf.* 2 *Collier on Bankruptcy* ¶¶ 101.36, 101.51, 101.53, at 101–121, 143, 147 (Alan N. Resnick et al. eds., 15th ed.2004) (stating that although judgment liens are "creature[s] of statute," they are distinct from statutory liens). We adopt this prudent approach and, as discussed above, conclude that Connecticut's statutory scheme regarding postjudgment procedures, as well as Connecticut case law applying these procedures, dictates that judgment liens are not "statutory liens" as contemplated by the homestead exemption.

## CONCLUSION

As a consequence, we reverse and remand this case to the district court with instructions that any judgment of foreclosure ordered must acknowledge and provide for payment to Trayner of her exemption to the value of $75,000.00 in accordance with Conn. Gen.Stat. § 52–352b(t).

Reversed and remanded.